## LOUIS ROGERS V. THE STATE.

No. 15220.   Delivered June 1, 1932.
Rehearing Denied December 14, 1932.
Reported in 54 S. W. (2d) 1010.

The opinion states the case.

*C. J. Williamson,* of Lockhart, and *Henry Faulk,* of Austin, for appellant.

*Fred L. Blundell,* District Attorney, of Lockhart, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense, murder; the punishment, death.

The appellant was jointly indicted with one Robert Cubit and Willie Ray Autrey for the unlawful killing of one G. W. Mann. The defendants each requested a severance and asked that the appellant herein be placed upon trial first. Said motion for severance was granted and the appellant was placed upon trial.

There are no bills of exception in the record and no exceptions to the court's charge.

The undisputed evidence showed that the deceased, G. W. Mann, commonly called "Dad" Mann, kept a little grocery store and hamburger stand in the northern part of the town of Luling, commonly known as the Flat, which was in the negro section of said town. The deceased was about 55 or 60 years of age, and lived in his little place of business alone. He had been in business in Luling for six or seven years, but had only been in that particular location for six or seven months prior to the time he was killed. The evidence further showed that he was killed on the night of May 13, 1931.

The witness J. T. Conley, a deputy sheriff of Caldwell county, testified that he lived right across a little street on the Bruner Field road from deceased's place of business and on the same side of the Bruner road. He (the witness) was at home on the night of the killing, and heard somebody holler twice for help. He secured a flash-light and ran to deceased's store, which was open, and nobody was there. He found the deceased in a ditch eight or ten feet deep, and there was an ice pick, six or eight inches long, with a handle about four inches long, sticking in his left breast. The deceased was not dead when the witness found him, but only gasped a couple of times after he was turned over and made no statement. The deceased had on his pants and shirt and was barefooted. The witness examined deceased's pockets and found no money, and the witness further testified that the deceased was in the habit of keeping his bills in one large folder and a purse in which he carried his change, and he carried both purses all the time, one in each pocket. A search of deceased's store the next morning failed to reveal either one of said purses.

The state introduced, as their principal witness, Willie Ray Autrey, who was jointly indicted with the appellant and Robert Cubit for the killing of deceased. Said Autrey testified, in substance, as follows: That the night before the killing he was at Bush's cafe and talked to Louis Rogers, the appellant, and

Robert Cubit; that one Woodson was also present in the cafe at the time, and they called him over to where they were, and Cubit asked Woodson whether Dad Mann had any money, and said, "You ought to know, you trade down there right smart," and said Woodson replied, "I guess so"; Cubit then asked the said Woodson where the deceased kept his money, and Woodson replied, "I guess he keeps it in his pockets." Autrey further testified that the appellant and Robert Cubit and himself all agreed to go down and rob the deceased, but that Woodson would not go with them and they did not go to deceased's place of business that night, but the next night he met appellant and Cubit at Bush's cafe, and, when it was about time for the cafe to close up, they decided to go down to deceased's place of business for the purpose of getting deceased's money. When they got back of the Tullos Machine Shop, which was just a little north of deceased's store, the witness asked the others what they wanted him to do, and they told him to "just stop here and watch and if anybody comes up you holler or make a noise." The witness further testified that he sat down on a pile of pipes by the machine shop, and appellant and Cubit went on to deceased's store; that he could see them enter the door of the store from where he was sitting, and after a little while they came back out with Dad Mann, the deceased, and each had him by the arm; that they got him outside of the door of his store and walked towards the edge of the highway, and at that time the deceased hollered, "Help, help," and then hollered, "Oh, oh," about twice. The witness then got up and ran back towards the west, and after he had run a little piece he stopped and looked back, and they were then going across the highway in front of the machine shop towards the east with the deceased between them; that the last time he saw the appellant, Louis Rogers, and Robert Cubit they were going down by the machine shop.

The appellant relies for reversal of this case upon the claim of insufficiency of the state's testimony to sustain the conviction due to the fact that such conviction was obtained by the state primarily through the evidence of the witness Autrey, who was jointly indicted with the appellant for the offense, and whose testimony was not corroborated by other evidence and witnesses to that degree of certainty and conclusiveness to the extent that the law requires. The evidence of this accomplice, if entitled to full credit, is unquestionably sufficient to sustain the conviction. The conviction cannot be sustained upon his testimony unless it is corroborated by other evidence tending to

connect the defendant with the offense committed. We must therefore examine the other evidence in the case, and from it ascertain whether or not this witness' statements have been corroborated to the extent required by law.

The witness Lee Woodson corroborated said accomplice to the extent that the appellant and Robert Cubit and the witness Autrey were at Bush's cafe together on the night before the killing and asked him if deceased had any money and where he kept it, and they all three said they were broke and were going down to rob Dad Mann, the hamburger man, and asked him to go with them, which he refused to do. He further testified that on the same night he heard a conversation between the appellant and Robert Cubit and one Dora Bell Chambers. He also testified that Cubit tried to borrow a pistol from said Dora Chambers, and also that he saw them at Bush's cafe the night of the killing talking together.. This evidence, if true, tends to corroborate the accomplice as to what occurred the night before the homicide at Bush's cafe and as to the avowed intention of the appellant and the two others to rob the deceased.

The witness Wesley Jenkins also corroborates the accomplice as to the appellant and the other two jointly charged with him being at his cafe together the night before the killing and also on the night of the killing.

The witness Tom Gant testified that on the night Dad Mann was killed he was checking traffic on the Bruner Field road with one Jacob Bolton, and about midnight they passed by Dad Mann's little store; that they were traveling about 15 miles an hour and were driving on the same side of the road that the deceased's store was situated, and they saw two men standing in front of the store and one of them was Robert Cubit whom he (the witness) had known all his life; that he did not know the other negro with him in front of the store that night, but that he had had occasion to observe the appellant, Louis Rogers, during the trial and that the second man he saw standing by Dad Mann's store was about the same size as appellant and about the same build and compared favorably with the appellant; that his best judgment was that the appellant was the man who was with Cubit that night, and that he looked like the man.

There was also evidence to the effect that there was a street light diagonally across the street from the deceased's store, and a person riding along the Bruner Field road in front of deceased's place of business could distinguish and recognize a man standing in front of said store.

The appellant testified in his own behalf, and denied in toto the testimony of the accomplice witness Autrey, and testified that he went to the home of Walter Hysaw about 10:30 on the night of the killing and stayed there the balance of the night.

Walter Hysaw was called in rebuttal by the state, and he testified that he got home about 9 o'clock on the night of the killing, and that the appellant did not stay at his house that night, did not stay any part of the night with him, and did not stay with him that entire week.

The witness McKinley Brawley testified that on the night Dad Mann was killed he, Volley Surrell, and Snooks Taylor were coming along by the calaboose about 12 o'clock, and they met Willie Ray Autrey coming from the direction of the machine shop, out of the little path that comes by Sleeping Jessie's house and through the mesquite thicket, and they all went to town together.

There are other facts in evidence, testified to by other witnesses than those whose testimony have been quoted, which tend to support the testimony of the accomplice Autrey, but we deem it unnecessary that we should refer to them. We think that it was sufficiently shown from the evidence set forth in the record that the testimony of the accomplice witness is corroborated to the extent required by law. It is not required that the corroboration should be conclusive. It is sufficient if it tends to connect the appellant with the offense committed. The test as to the sufficiency of the corroboration is to eliminate from the case the evidence of the accomplice witness, and then examine the evidence of the other witnesses with the view of ascertaining if there be inculpatory evidence, that is, evidence of incriminating character, which tends to connect the accused with the commission of the offense. If there be such evidence, the corroboration is sufficient. See Durham v. State, 106 Texas Crim. Rep., 85, 290 S. W., 1092; Jones v. State, 59 Texas Crim. Rep., 559, 129 S. W., 1118. The corroborating testimony need not be sufficient to establish the guilt of the defendant, for, if this were the rule, the testimony of the accomplice would be of no value. Branch's Ann. Penal Code, sec. 719, and authorities collated thereunder.

We are of the opinion that the verdict of the jury is supported by the testimony.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has

been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—The sufficiency of the corroborating testimony to meet the measure of the law is challenged in the motion for rehearing as it was upon the original hearing. The law declares that there must be corroborating evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense. Article 718, C. C. P., 1925. This statute was in the first Code of Criminal Procedure adopted in this state, and since its adoption it has remained unchanged. Speaking of it in a recent case, the following language was used: "In the reports the word 'tend' has been defined 'to have a leaning' (Chandler v. State, 89 Texas Crim. Rep., 597, 232 S. W., 318); 'serve, contribute or conduce in some degree or way,' or 'have a more or less direct bearing or effect' (Boone v. State, 90 Texas Crim. Rep., 374, 235 S. W., 580, 584); 'to be directed as to any end, object, or purpose' (Nash v. State, 61 Texas Crim. Rep., 259, 134 S. W., 709); and in Webster's Dictionary, the word 'tend' is thus defined: 'To be directed or have a tendency, conscious or unconscious, to any end, object or purpose.'" Shrader v. State, 51 S. W. (2d) 607. See, also, Minor v. State, 108 Texas Crim. Rep., 1, 299 S. W., 422.

The requirement of the statute may be met by circumstances as well as by direct evidence. See Nash v. State, 61 Texas Crim. Rep., 259, 134 S. W., 709.

G. W. Mann, about 60 years of age, kept a small grocery store and lived near the road which leads from the town of Luling to the Bruner oil field. It was an extension of one of the streets of the city of Luling. The main street ran east and west and the Bruner oil field road ran north and south, intercepting the main street at right angle.

The witness Conley, a deputy sheriff, gave testimony as set forth in the original opinion, going to show that Mann was killed by a stab from an ice pick; that he had been robbed; that he was taken from his store partly dressed and barefooted.

Autrey, the accomplice, testified that on the night previous to the death of Mann, he overheard the making of a conspiracy by the appellant Rogers and his codefendant Cubit, the object of the conspiracy being to rob the deceased. Autrey joined the conspiracy, according to his testimony, and performed the part

that was assigned to him, namely, to keep watch and warn his confederates in case of necessity. According to Autrey, Rogers and Cubit entered the store of the deceased. Shortly thereafter they, together with the deceased, came from the store. Mann called for help. His cry was heard apparently by the witness Conley, who answered the call and found Mann's store rifled and his money gone, and his body at a place in accord with the testimony of Autrey. That the conspiracy described by Autrey was made was vouched for by the witness Woodson, as shown in the original opinion. That the parties were together at the time of the conspiracy as claimed by the accomplice to have been made was likewise shown by the witness Jenkins.

The witness Gant gave testimony going to show that in passing along the road near Mann's store about the time the robbery (according to Autrey) took place, he saw two men at Mann's store. One of them was Cubit, the coconspirator of the appellant. On the trial, Gant circumstantially identified Rogers as the companion of Cubit at the time the offense was committed.

The appellant's testimony denying his association with Autrey on the night of the tragedy was controverted by the testimony of the witness Hysaw. Other witnesses, as shown in the original opinion, corroborated Autrey touching the association of Cubit and the appellant with Autrey at the time the latter claims the conspiracy to have been formed.

In his motion for rehearing, appellant's counsel adverts to certain circumstances which it is argued were calculated to render improbable the statement of Autrey. These circumstances, however, were before the jury.

Upon a review of the record and the evidence in the light of the motion for rehearing, we are constrained to the view that the testimony relied upon to corroborate the accomplice is sufficient, if believed, to comply with the requirement of the statute. Its truth, as stated above, was a matter for the jury, and their finding is binding upon this court.

The suggestion of the appellant that this court should find as a fact that the presence of the appellant at the time of the commission of the offense was shown by the record to be impossible and that the testimony of the accomplice witness was untrue, calls upon this court to go beyond its province and to invade the domain in which the jury is supreme. To determine whether there be evidence in the record is the province of the

338

court. To determine whether the evidence is true is the province of the jury, committed to that body by the law of the land.

The motion for rehearing is overruled.

*Overruled.*