Roger Dean BOONE, Appellant,

v.

The STATE of Texas, Appellee.

No. 45864.

Court of Criminal Appeals of Texas.

April 11, 1973.

Rex Kirby, Tyler, for appellant.

Curtis L. Owen, Dist. Atty., and John E. Trube, Asst. Dist. Atty., Tyler, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for disorderly conduct wherein the punishment was assessed at a fine of $160.00. See Article 474, Vernon's Ann.P.C.

The complaint, omitting the formal parts, charged that the appellant

". . . did then and there unlawfully engage in indecent conduct in a public place, to wit: the place known as Sandy Beach on Lake Tyler, Smith County; by being present in said public place in the nude under circumstances in which such conduct tended to cause or provoke a disturbance . . . . "

After conviction in the Justice of the Peace Court, there was a trial de novo in the County Court at Law. Hence, this conviction and appeal.

Appellant intially challenges the sufficiency of the evidence to sustain this conviction for disorderly conduct under Article 474, § 1(5), supra, which reads, in pertinent part, as follows:

"Section 1. . . . Disorderly conduct consists of any of the following:

.   .   .   .   .   .

(5) in a public or private place engages in violent, abusive, indecent, profane, boisterous, unreasonably loud, or otherwise disorderly conduct under circumstances in which such conduct tends to cause or provoke a disturbance;

.   .   . "

The record reflects that two Smith County Deputy Sheriffs and two Highway Patrolmen of the Department of Public Safety in two separate vehicles approached Sandy Beach on Lake Tyler about 12:30 a. m. on July 12, 1971 to check the area although they had received no specific complaint. At the beach, lighted by four lights on the top of two-100 foot telephone poles, they found four cars and approximately eight males at or near the cars in question. The officers began questioning these individuals about possible liquor law violations. No one was arrested.

During this investigation, Wayne Hellen, one of the highway patrolmen, noticed two people swimming in the lake. He instructed them to come out. The appellant responded that he could not come out because he did not have on any clothes. Hellen replied, "If you went in that way, you ought to be able to come out that way." Following the officer's instructions, the appellant emerged from the lake immediately put on his clothes and went to the patrol car as instructed.[1] Following him out of the water was a young lady who was also nude. She first put on a T-shirt and, after some protest, put on a pair of pants and also went to the patrol car.

Three of the four officers present at the scene testified for the State. Each of the

1. This whole transaction was shown to have lasted approximately one minute.

officers affirmatively stated that there was no disturbance at the beach at the time in question. When Patrolman Hellen was asked if the tranquility of the area was disturbed when the appellant came out of the water, he replied, "Oh, it was a little movement around, looking, more or less." He further stated there was no commotion among the people. Patrolman Conway, when asked if the people on the beach became more boisterous when the two came out of the water, replied, "I didn't notice it if they did." A deputy sheriff testified that one group of boys "kind of laughed and cut up a little bit," "acted up," but related they left upon request.

The officers, by their testimony, speculated that a disturbance could have ensued had they not been present. Their testimony reflected that a sense of "tension" in the "crowd" arose from the young lady's appearance on the beach in front of the eight males, rather than from the appellant's nude appearance. Questioning of one of the officers revealed the following:

"Q You testified a moment ago that you could tell a tension in the air. What did you have in mind, . . . ?

A Well, any time a grown woman walked in front of a man completely nude, any normal man, I believe, would have a tension."

Testifying in his own behalf, the appellant, a 21-year old junior college student, stated he had arrived at the beach about 12:35 a. m. and he had started wading in the darkest area of the beach when he decided to take his pants and other clothes off to keep them and his billfold dry; that he had only been in the water three minutes when an officer ordered him out of the water. He admitted he knew the girl but denied taking her out "there" and further related that she was "there and came in the water."

The issue to be decided is whether appellant's conduct "[tended] to cause or provoke a disturbance." Did such conduct "contribute in some degree or way" to cause or provoke a disturbance under the circumstances or "have a more or less direct bearing or effect" in causing or provoking a disturbance? See Rogers v. State, 54 S.W.2d 1010 (Tex.Cr.App.1932) (defining the word "tend").

"Disturbance" is defined in Black's Law Dictionary, 4th Ed.Rev., p. 563, as

"[a]ny act causing annoyance, disquiet, agitation, or derangement to another, or interrupting his peace, or interfering with him in the pursuit of a lawful and appropriate occupation or contrary to the usages of a sort of meeting and class of persons assembled that interferes with its due progress or irritates the assembly in whole or in part."

See State v. Mancini, 91 Vt. 507, 101 A. 581, 583. *Cf.* "Disturbance", Words and Phrases, vol. 13, p. 65.

Even assuming arguendo that the appellant's conduct in coming onto the beach nude at the officer's instruction was indecent,[2] we cannot agree that such conduct, *under the circumstances*, was such conduct which tended to cause or provoke a disturbance. The appellant was being tried for his conduct not for the conduct of the young woman who was also there.

Finding the evidence insufficient to sustain the verdict, the judgment is reversed and the cause remanded.

2. This is the act upon which the State relies for prosecution.