STATE v. FRANK MANCINI.

October Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed August 2, 1917.

*Exceptions—When Unavailing—Officers—Arrest Without War-
rant—Duty to Submit—When Arrest May Be Made—Breach
of the Peace—What Constitutes—P. S. 5870—Public Peace
—Violation of Public Order and Decorum—Disturbance of
Public Assemblies—What Constitutes—Duty of One Present
at Public Dance—Right to Possess and Drink Intoxicating
Liquor—Jury Question—Evidence—Materiality—Cross-ex-
amination—Trial—Statements of Counsel—When Exception
Requested May Be Ignored by Trial Court.*

Exceptions taken to the failure of the trial court to comply with certain
    requests to charge are unavailing where the requests are made a
    part of the bill of exceptions and are required to be printed, but
    no copies are furnished to the Supreme Court.

If the circumstances are such as to justify an officer in making an
    arrest without a warrant, it is the duty of the one arrested to
    submit, and a resistance constitutes a breach of the peace; but if the
    previous conduct of the person arrested was not such as to make
    him liable to arrest without warrant, the act of the officer in doing
    so is an assault upon him, which he can lawfully resist.

An officer may arrest without a warrant for a breach of the peace com-
    mitted in his presence, and in some circumstances he may do this
    to prevent a breach of the peace.

The question whether certain conduct constitutes a breach of the peace
    often depends largely upon the circumstances of the particular
    case; for an act which would be lawful in some circumstances may
    amount to a breach of the peace if done in other circumstances.

A breach of the peace may be committed in other ways besides those
    specified in P. S. 5870, for this section is not a definition of the
    crime known as breach of the peace, but is a statute defining cer-
    tain modes of committing that offence, and the term is generic and
    includes all violations of the public peace or order.

The public peace is that sense of security and tranquility which every

person feels under the protection of the law; and a breach of the peace is an invasion of the protection which the law thus affords.

A violation of public order or decorum, if calculated and intended to disturb the public tranquility, may constitute a breach of the peace.

Speaking generally, the law applicable to the disturbance of public assemblies is that any conduct which, being contrary to the usages of the particular sort of meeting and class of persons assembled, interferes with its due progress, or is annoying to the assembly in whole or in part, is a disturbance.

It was the duty of the respondent, who was present at a public dance at the invitation of those in control of it, to conform his conduct to their reasonable requirements, and he had not an absolute right to possess and drink beer while there.

When persons attending an appointed lawful meeting of any description conduct themselves in a manner lawful in itself, but at variance with the purpose of the gathering and inconsistent with its orderly procedure, it will ordinarily be for the jury to say whether their conduct was such as amounted, in the circumstances, to a disturbance of the peace.

Whether respondent's conduct amounted to a breach of the peace, *held*, under the evidence, to be a jury question.

In a prosecution for breach of the peace, for assaulting one who had arrested respondent without a warrant, it was material for the State to show that the person who made the arrest was a peace officer, as bearing upon his right to do so without a warrant.

In a prosecution for a breach of the peace, evidence that respondent was arrested and placed in a temporary lockup, was material as being a part of the transaction under investigation.

In a prosecution for breach of the peace it was not error to exclude a question, asked on cross-examination of the officer who made the arrest, as to what particular thing in respondent's conduct he complained of as constituting the offence, this being a matter for the jury to decide.

The trial court may properly ignore a request for an exception to a statement made on argument by counsel on a motion for a directed verdict where such statement is warranted by the evidence.

Evidence examined and *held*, to support statements made by counsel in his argument to the jury.

COMPLAINT for breach of the peace. Plea, not guilty. Trial by jury in the Brattleboro Municipal Court, *Frank E. Barber,* Judge. Verdict, guilty. Respondent excepted. The opinion states the case.

*Gibson & Daley* and *W. D. Smith* for respondent.

*O. B. Hughes, State's Attorney,* for the State.

MUNSON, C. J.    Mancini has been convicted in the municipal court of Brattleboro on a complaint charging a breach of the peace by tumultuous and offensive carriage, and by assaulting one Adin Miller.    A dance was in progress in the Grange hall in Dummerston, and the constable of Dummerston was in attendance in his official capacity.    Sometime in the middle of the night he procured the attendance of Miller, who was a deputy sheriff, but wore nothing on this occasion indicative of his office. Three men had been arrested before the occurrence in question, and were then being confined in the lodge room.    This room and the supper room were in the rear of the building on the lower floor, and were connected with an ante-room in front, which was reached by a stairway from the main hall above.    As Miller was coming from the supper room, he saw four men in the ante-room coming towards him with bottles in their hands, one of whom was Mancini.    Miller, without saying anything, stepped up to Mancini and took hold of some of the bottles he was carrying, whereupon Mancini and another of the party wrenched them from Miller's hands.    Upon this Miller "collared" Mancini, and Mancini pushed his hands over Miller's face, trying to get at his throat.    At the time Mancini attempted this, Miller said, "You are fighting an officer; you are under arrest."    Miller kept his hold on Mancini and took him to the lodge room, Mancini fighting him all the while in an effort to get away.    Miller testified that he arrested Mancini for a breach of the peace.

The exceptions state that the respondent made several requests to charge, and was allowed exceptions to the court's refusal to comply with them; and these requests are referred to and made a part of the bill, and are required to be printed.    Two of these exceptions are argued, but they cannot be considered, as no copy of the requests has been furnished.    The transcript of the evidence and charge is referred to and made controlling accord-

ing to section 2 of County Court Rule 31, and it appears from this that certain exceptions to the admission and exclusion of evidence were taken by the respondent, and that there was a motion to direct a verdict on several grounds presented informally in an oral discussion. This covered the claims that there was no evidence to warrant the finding of a breach of the peace or of any violation of law by the respondent; that the respondent had a right to the possession of the bottles, and to use force enough to retain possession; that Miller acted throughout without authority, and that the respondent had a right to resist him as he did.

There was ample evidence to sustain the complaint, if the circumstances were such as to justify Miller in arresting without a warrant. If this was the case it was the respondent's duty to submit, and his resistance would constitute a breach of the peace as charged. *State* v. *Carpenter,* 54 Vt. 551. But if the respondent's previous conduct was not such as to make him liable to arrest without a warrant, Miller's interference was, in the circumstances, an assault upon the respondent which he could lawfully resist. *State* v. *Hooker,* 17 Vt. 658; 2 Bish. Cr. Law, § 37; note, 84 Am. St. Rep. 698. So in order to determine whether the respondent had a right to make the resistance he did, it will be necessary to ascertain whether the officer could lawfully make the arrest. 2 R. C. L. 474; note, 84 Am. St. Rep. 700.

An officer may arrest without a warrant for a breach of the peace committed in his presence, and in some circumstances he may do this to prevent a breach of the peace. 5 C. J. 408. The question whether certain conduct constitutes a breach of the peace often depends largely upon the circumstances of the particular case. An act which would be lawful in some circumstances may amount to a breach of the peace if done in other circumstances. 8 R. C. L. 285. If it were conceded that respondent's conduct previous to his being "collared" by Miller did not constitute a breach of the peace by tumultuous and offensive carriage, this would not be determinative of the case. A breach of the peace may be committed in other ways than those specified in P. S. 5870. This section is not a definition of the crime known as breach of the peace, but is a statute defining certain modes of committing that offence. *State* v. *Boyd,* 91 Vt. 88, 99 Atl. 515. The term is generic, and includes all violations of the public peace or order. *State* v. *Clark,* 64 W. Va. 625, 63 S. E. 402.

A breach of the peace is described as "a violation of public order; the offence of disturbing the public peace." Bouv. Dict. The public peace is that sense of security and tranquillity, so necessary to one's comfort, which every person feels under the protection of the law; and a breach of the peace is an invasion of the protection which the law thus affords. *State* v. *Archibald,* 59 Vt. 548, 9 Atl. 362, 59 Am. Rep. 755. A violation of public order or decorum, if calculated and intended to disturb the public tranquillity, may constitute a breach of the peace. Bouv. Dict.; *Davis* v. *Burgess,* 54 Mich. 514, 20 N. W. 540, 52 Am. Rep. 828; *Stewart* v. *State,* 4 Okl. Cr. 564, 109 Pac. 243, 32 L. R. A. (N. S.) 505; *Delk* v. *Commonwealth,* 166 Ky. 39, 178 S. W. 1129, L. R. A. 1916 B, 1117.

Mr. Bishop says that whatever, of sufficient magnitude for the law's notice, one willfully and unjustifiably does, to the disturbance of the public order or tranquillity, is indictable at' common law. 1 Bish. Cr. Law, § 533. He refers to "breaches of the peace" as a term of indefinite, yet large, and sometimes greatly expanded, meaning, and says further that "commonly and more narrowly it signifies any criminal act of a sort to·disturb the public repose." Section 536. With reference to the disturbance of assemblies he says: "When people assemble for worship, or in their town or other like meetings, or probably always when they come together in an orderly way for a purpose not unlawful, the common law makes it a crime to disturb their meeting. What amounts to disturbance varies with the nature and objects of the meeting." Section 542.

P. S. 5871 prescribes the penalty incurred by "a person who by a disorderly or unlawful act disturbs a town, society or district meeting, or a school, or any meeting lawfully assembled." In considering what constituted a disturbance under a similar statute in Massachusetts, *Shaw,* C. J., said: The question "cannot easily be brought within a definition applicable to all cases. It must depend somewhat upon the nature and character of each particular kind of meeting, and the purposes for which it is held, and much also on the usage and practice governing such meetings. * * It must be decided as a question of fact in each particular case; and although it may not be easy to define it beforehand, there is commonly no great difficulty in ascertaining what is a willful disturbance in a given case." *Commonwealth* v. *Porter,* 1 Gray (Mass.) 476. Speaking generally, the rule applicable to

disturbances of public assemblies is that any conduct which, being contrary to the usages of the particular sort of meeting and class of persons assembled, interferes with its due progress, or is annoying to the assembly in whole or in part, is a disturbance. 2 Bish. Cr. Law, § 309.

It is urged that the respondent was only doing what he had a right to do; that he was the owner of the beer and had a right to do as he pleased with it, if it was not used for an illegal purpose. But the respondent's right to possess and drink the beer at the time and place in question was not absolute. It was not even such as it might have been in that place at some other time,—as when the place was otherwise occupied. The respondent was there at the invitation of those in control of the dance, and it was his duty to conform his conduct to their reasonable requirements. See 2 Bish. Cr. Law, § 310.

The importance of the attending circumstances as an element in determining whether the conduct complained of amounts to a breach of the peace, is indicated by many adjudged cases, and is fairly apparent from the statutory characterization of the act as one which disturbs or breaks the public peace. It has been held in this State that a boxing match, while not a breach of the peace as conducted in ordinary athletic sports, may be so conducted as to become such; and that it is for the jury, under proper instructions, to determine from the nature of the conduct whether the offence has been committed. *State* v. *Burnham*, 56 Vt. 445, 48 Am. Rep. 801. And when persons attending an appointed lawful meeting of any description conduct themselves in a manner lawful in itself, but at variance with the purpose of the gathering and inconsistent with its orderly procedure, it will ordinarily be for the jury to say whether their conduct was such as amounted, in the circumstances, to a disturbance of the peace.

Here four young men, one of whom was the respondent, with hands filled with beer bottles, were making their way through the rooms used for and in connection with the dance. Officers were present to preserve order and protect from annoyance those properly pursuing the purpose of the gathering. Others had been arrested for a drunken disturbance shortly before this occurrence, in circumstances from which it may fairly be presumed that the fact was known to the respondent. The officer in charge had previously cautioned the respondent in connection with his possession of a suit-case apparently containing bot-

tles, and told him to behave himself. We cannot say as a matter of law that the respondent's conduct was not, in the circumstances, a breach of the peace. On the evidence, the question was for the jury under proper instructions.

Against objections that the evidence was irrelevant and immaterial, the State was permitted to show that Miller was a deputy sheriff, and that the respondent was arrested and placed in a temporary lockup. Neither ruling was error. It was material to show that Miller was a peace officer as bearing upon his right to arrest without a warrant. The arrest and placing in a temporary lockup were a part of the transaction under investigation, and so not immaterial.

Miller was called as a witness for the State, and testified to the facts leading up to the respondent's arrest. In cross-examination he was asked: "And the only breach of the peace that you complain of is because the respondent objected to your taking a bottle of beer from his hand as you have described?" The question was excluded, and the respondent excepted. The reason advanced in support of the exception is that Miller was the complaining witness. It does not appear that this was the fact. Besides, it was immaterial what particular thing in the respondent's conduct Miller complained of. The jury and not the witness was to judge of the quality of the acts which the prosecution relied upon as constituting a breach of the peace. The witness had testified fully as to the facts both in direct and cross-examination.

In his argument to the court on the respondent's motion for a directed verdict, the state's attorney said, in effect, that a drunken fracas had taken place earlier in the evening. The respondent asked that an exception to the statement be noted, but the court ignored the request, and could properly do so, for the reason, among others, that the evidence warranted the statement.

The state's attorney claimed and argued in substance that when Miller saw the respondent coming into the hall with bottles of beer he had a right to investigate and ascertain whether or not it was being carried in for unlawful sale or distribution. The respondent excepted because there was no evidence that Miller had reason to believe that it was for unlawful sale or distribution, and no evidence that he seized it for that reason. The court, "in view of the discussion" (apparently referring to that

had in the presence of the jury on the motion for a verdict), charged on this subject that intoxicating liquor, being goods the sale and distribution of which are prohibited in this State—in other words being contraband—the officer had a right to intercept the respondent and inquire of him as to what was to be done with the liquor, if he reasonably believed that it was to be sold, furnished or given away in violation of law. The respondent excepted to this on the ground that the evidence did not disclose that Miller had any reason to believe or did believe that the liquor was being carried by the respondent for any unlawful purpose.

It was not claimed that the argument and charge on this point did not correctly state the law; so we have no occasion to consider anything more than whether the evidence met the respondent's objection. Miller testified that he grabbed the bottles because he thought it wasn't just the thing to bring them into the hall; that he wanted to see what was going on; that he arrested the respondent because he thought he was breaking the peace by bringing "stuff" into the hall; that he took the bottles to see what they were. In answer to the respondent's questions the witness said: "My mind was to know why they were bringing such stuff into the hall and what they were going to do with it; it occurred to me that three or four fellows, coming into the hall with their hands full of bottles, couldn't use it all themselves, and were violating the law and disturbing the peace; (that) it was a breach of the peace, bringing this stuff into the hall under the conditions that night." It appeared from the testimony of the officer in charge that earlier in the evening the respondent had in the hall a dress suit-case containing bottles, and that witness spoke to him about it and cautioned him as hereinbefore stated, and that the respondent thereupon took the dress suit-case outside the hall, three or four fellows going with him. This evidence and the inferences to be drawn from it fairly tended to support the argument and charge.

Other exceptions not noticed are too clearly without merit to require special consideration.

*Judgment that there is no error in the proceedings, and that the respondent take nothing by his exceptions.   Let execution be done.*