some hesitation, and only by a divided court, and mainly because the connection in which the term is used in said article 85 indicates that the intention was to designate by that term the political bodies having legislative powers; and police juries are of that character. But the context in article 232, viz. any "parish, municipal corporation, ward or school district," indicates, on the contrary, that by the term "municipal corporation" cities, towns, and villages solely are meant to be designated.

On both grounds of nullity the tax is null.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and it is now ordered, adjudged, and decreed that an injunction issue as prayed for, and that the same be made perpetual, and that the plaintiffs, William T. Joyce Company and Hackley & Hume Company, have judgment against the police jury of the parish of Tangipahoa for the sum of $15,531.56, with legal interest thereon from the 20th day of December, 1918, the date of the filing of the present suit, and that the defendant pay the costs of this suit.

O'NIELL, J., concurs in the decree.

---

(83 South. 637)

No. 23782.

STATE v. BROOKS.

(Dec. 2, 1919. Rehearing Denied Jan. 5, 1920.)

*(Syllabus by Editorial Staff.)*

1. DISORDERLY HOUSE &approx;4—PUBLIC PLACE WHERE WOMEN SOLICIT IMMORAL ACTS IS A "DISORDERLY HOUSE."

Within Act No. 199 of 1912, defining a "disorderly house" as a place of public resort so conducted as to disturb the public peace and quiet of the neighborhood, a house of public resort where women congregate for the purpose of soliciting men for immoral sexual intercourse is against the peace and quiet of the neighborhood and is disorderly.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Disorderly House.]

2. INDICTMENT AND INFORMATION &approx;110(11) —STATUTORY DEFINITION OF DISORDERLY HOUSE AS PLACE CONDUCTED TO DISTURB "PUBLIC PEACE AND QUIET" IS SUFFICIENT.

The definition of a "disorderly" house by Act No. 199 of 1912 as a house of public resort conducted in such a manner as to disturb the public peace and quiet of the neighborhood is sufficiently definite to give the accused knowledge of the crime defined, since "public peace and quiet" has a well-defined, long-accepted meaning as peace, tranquillity, and order and freedom from agitation or disturbance, the security, good order, and decorum guaranteed by civil society and by the law.

[Ed. Note.—For other definitions, see Words and Phrases, Public Peace.]

3. DISORDERLY HOUSE &approx;12 — INDICTMENT NEED NOT ALLEGE HOUSE WAS OUTSIDE LIMITS FIXED FOR SUCH HOUSES.

Under Act No. 199 of 1912, defining a "disorderly house" as a house of public resort conducted so as to disturb peace and quiet of the neighborhood or a house of prostitution outside the limits fixed by municipal ordinance for such houses, an indictment for keeping a house which disturbed the peace of the neighborhood by permitting women to solicit immoral sexual intercourse need not allege that the house was outside the limits fixed for prostitution.

Provosty and O'Niell, JJ., dissenting.

Certiorari from Criminal District Court, Parish of Orleans.

Harry C. Brooks was indicted for keeping a disorderly house, the indictment was quashed by the district judge, and the State applies for writs of certiorari, prohibition, and mandamus. Judgment quashing indictment reversed, and district judge prohibited from enforcing it, and ordered to reinstate case on the docket.

Chandler C. Luzenberg, Dist. Atty., of New Orleans, for the State.

Charles A. Byrne, of New Orleans, for respondent.

SOMMERVILLE, J. The district attorney represents:

That the grand jury found the following indictment against Harry C. Brooks:

"That one Harry C. Brooks, late of the parish of Orleans, on the 18th day of June in the year

of our Lord one thousand nine hundred and nineteen, with force and arms, in the parish of Orleans aforesaid, and within the jurisdiction of the criminal district court for the parish of Orleans, did then and there unlawfully keep at the municipal number one thousand twenty-one Iberville street, in the city of New Orleans, a disorderly house, that is to say, did then and there keep a house at the municipal number one thousand twenty-one Iberville street, in the city of New Orleans, open to the public, and conducted in a manner to disturb the public peace and quiet of the neighborhood, in that lewd women openly congregated therein for the purpose of soliciting men for immoral sexual intercourse, and lewd women then and there did openly solicit men for immoral sexual intercourse, contrary to the form of the statute of the state of Louisiana in such cases made and provided and against the peace and dignity of the same."

That said indictment was drawn under Act 199 of 1912, p. 395, which is as follows:

"An act to define a disorderly house; making it a misdemeanor to operate houses of that character; fixing the penalty therefor and repealing all laws or parts of laws in conflict therewith.

"Section 1. Be it enacted by the General Assembly of the state of Louisiana, that a disorderly house is hereby defined as any house of public entertainment, or a public resort, or open to the public, conducted in such a manner as to disturb the public peace and quiet of the neighborhood, also any place in which lewd dancing is permitted, or in which lewd pictures are accessible to view, or any house used for the purposes of prostitution or assignation outside the limits fixed by municipal ordinance for houses of that character; provided, that the use of any room, or any part of a building for any of the purposes, or in any of the ways hereinabove enumerated, shall constitute such rooms or such part a disorderly house.

"Sec. 2. Be it further enacted, etc., that any person who shall keep a disorderly house as defined in section 1 shall be fined in a sum not less than ten dollars nor more than five hundred dollars and be imprisoned not less than thirty days nor more than sixty days, provided that in the parish of Orleans the district attorney shall not collect any fee for conviction under the provisions of this act. All laws and parts of laws in conflict herewith are hereby repealed."

That defendant was duly arraigned, and pleaded not guilty. That he withdrew said plea, with the permission of the court, and moved to quash the indictment on the ground that the indictment did not allege that the said disorderly house was conducted outside the limits fixed by the municipal ordinance for houses of that character, and that the allegation that lewd women openly congregated therein for the purpose of soliciting men for immoral sexual intercourse, and lewd women then and there did openly solicit men for immoral sexual intercourse, without the additional averment that an act of prostitution was committed within the said premises, constituted no violation of the law.

That the indictment was quashed by the district judge, and Brooks was ordered discharged.

That the court erred in quashing the indictment and discharging Brooks, and that the state is without the right of appeal from the judgment.

The district attorney invokes the supervisory power of this court, and asks that a writ of certiorari issue herein, that the entire record be brought up, and that the judge of section B of the criminal district court for the parish of Orleans be forbidden to execute and enforce the judgment before referred to and discharge the said Brooks from custody, and that the judge be ordered to reinstate the case on the docket of the court in order that it may be fixed for trial and tried according to law.

The judge in his return says that Act 199 of 1912 does not define and denounce the crime charged in the indictment in this case, and that the definition of a disorderly house would be remitted to the grand jury or to the district attorney or to judicial discretion, which would be unconstitutional; that it is doubtful whether or not the words of the statute "conducted in a manner as to disturb the public peace and quiet of the neighborhood" are sufficiently definite to bring to the mind of the accused a definite knowledge of

the crime defined therein; that the only crime that could be charged against Brooks, the accused, under the act, would be an offense against the accepted meaning of the words "public peace and quiet of the neighborhood"; that there is no law which prohibits men from frequenting houses of assignation or prostitution, and the soliciting of lewd women could not therefore have the effect of causing men to violate the law, and therefore disturb the public peace and quiet of the neighborhood; that there were three cases before him under Act 199, namely, State v. Anderson, State v. Brooks, and State v. Crucia; that the Anderson Case was tried, and respondent rendered judgment "that there was no law of the state under which the indictment could be brought, but that, even if there were, the state had failed to prove the facts stated in the indictment," and therefore discharged Anderson, that in view of the opinion in the Anderson Case argument was unnecessary in disposing of the motion to quash in the Brooks Case, and that he thereupon maintained the motion to quash.

Reference to Act 199, as quoted hereinabove, defines a disorderly house, and denounces the crime of keeping one.

The object of the act is clearly stated in the title. It is "An act to define a disorderly house," etc. The legislative intention to define what constitutes a disorderly house is made perfectly plain by the title, and that which constitutes a disorderly house is made equally clear by the text of the act, which provides:

"That a disorderly house is hereby defined as any house of public entertainment, or a public resort, or open to the public, conducted in such a manner as to disturb the public peace and quiet of the neighborhood," etc.

It is under the first clause of this act that the indictment against Brooks was drawn.

The act further defines disorderly houses to be:

"Also any place in which lewd dancing is permitted, or in which lewd pictures are accessible to view, or any house used for purposes of prostitution or assignation outside the limits fixed by municipal ordinance for houses of that character."

The act thus defines a disorderly house; but we have only to consider the first clause of this act, as Brooks is not charged with keeping a house of prostitution or assignation, or a place where lewd dancing is permitted or lewd pictures are accessible to view.

[1] Brooks stands charged with having kept a disorderly house on June 18, 1919; that is to say, he—

"did then and there unlawfully keep a house at the municipal number one thousand twenty-one Iberville street, in the city of New Orleans, open to the public, and conducted in such a manner as to disturb the public peace and quiet of the neighborhood, in that lewd women openly congregated therein for the purpose of soliciting men for immoral sexual intercourse, and lewd women then and there did openly solicit men for immoral sexual intercourse, contrary to the form of the statute of the state of Louisiana in such case made and provided, and against the peace and dignity of the same."

The indictment specifically charges that Brooks' house was open to the public, that lewd women without concealment congregated therein for the purpose of soliciting men for immoral sexual intercourse, and that dissolute and lustful women did in that house solicit men for immoral sexual intercourse.

The facts which the evidence must show to meet the allegations set forth in the indictment are that the said Brooks did keep a house at the municipal number alleged in the indictment; that the said house was open to the public; that lewd women openly congregated therein for the purpose of soliciting men for immoral sexual intercourse; and that lewd women did then and there openly solicit men for immoral sexual intercourse— all on the day and date charged in the indictment.

A public place where thieves, criminals, or

idle and vicious persons congregate for the purpose of dividing their spoils, to make plans for the commission of other crimes, or where lewd women congregate for the purpose of soliciting men for immoral sexual intercourse, is certainly against the peace and quiet of the neighborhood where the house or room may be located, and against the peace and dignity of the state at large.

The state contends, properly, that the congregating openly of lewd women in a public house for the purpose of soliciting men for immoral sexual intercourse, and in said public house openly soliciting men to have immoral sexual intercourse, constitutes a menace to the morals and health of the community, and therefore comes under the statute as a house that disturbs the peace of the neighborhood, and is a disorderly house.

"A place of public resort may be a disorderly house if it is so kept as to tend to promote idleness, or illegal or immoral conduct." 18 C. J. p. 1239.

The Legislature fully defines what a disorderly house is; and the language of the indictment follows the language of the statute charging Brooks with having kept a disorderly house, with specifications of the nature of the disorder carried on in the house. The accused was amply able to prepare his defense under such a charge. The disorder complained of is fully set forth in the indictment; and that disorder is indictable under the statute.

The case of the State ex rel. Etie v. Foster, 112 La. 746, 36 South. 670, cited by the respondent judge, is not an authority in support of his position in this case. In the Etie Case the defendant is charged with "unlawfully keeping a disorderly tavern or tippling-house," under section 908 of the Revised Statutes. There section 908 denounced the common-law offense of keeping a disorderly tavern or tippling-house without in any manner defining what a disorderly house

was, and the indictment failed to state in what respect the tavern or tippling-house was disorderly, and a motion to quash and the judgment quashing the indictment were sustained.

[2] The respondent judge is in error is saying that it is doubtful whether or not the words of Act 199, "conducted in such a manner as to disturb the public peace and quiet of the neighborhood," are sufficiently definite to bring home to the accused a definite knowledge of the crime defined therein. The term "peace and quiet" has a well-defined meaning, long accepted, and has been in constant use in charging persons with crime. "Peace," in its legal signification, is:

"Quiet, orderly behavior of individuals to one another and toward the government." 30 Cyc. p. 1326.

"Peace is the tranquillity enjoyed by a political society internally by the good order which reigns among its members." A. & E. Encyclopedia of Law, vol. 23, p. 638.

"Public peace is public tranquillity and quiet order and freedom from agitation or disturbance which is guaranteed by the law." A. & E. Encyclopedia of Law (2d Ed.) vol. 23, p. 464.

"In a somewhat technical sense, peace denotes the quiet, security, good order, and decorum which is guaranteed by the Constitution of civil society and by the law." Black's Law Dictionary.

Sneak thieves, embezzlers, midnight burglars, bootleggers, gamblers, etc., do not disturb the public peace by noise or other outward demonstrations; but they operate against the peace and quiet of the state in plying their several vocations. And the openly congregating of lewd women in a public house for the purpose of soliciting men for immoral sexual intercourse, and in said public house openly soliciting men for immoral sexual intercourse, constitutes a menace to the morals and health of the community, and therefore comes under the statute as a house which disturbs the peace of the neighborhood, and it is a disorderly house.

[3] That portion of the return which says that the indictment is faulty because it does not allege that the house kept by Brooks was conducted outside the limits fixed by municipal ordinance for houses of prostitution is entirely without merit. The indictment does not allege that Brooks' house was a house used for the purposes of prostitution or assignation, and therefore it was not necessary, under the act, to allege that the disorderly house kept by Brooks was outside the limits prescribed by municipal ordinance for houses of prostitution or assignation. The charge against Brooks is entirely complete without the addition of that provision of the law.

The motion to quash should have been overruled.

It is therefore ordered, adjudged, and decreed that the judgment quashing the indictment against Brooks be reversed and set aside, and that Hon. Arthur Landry, judge ad hoc of section B of the criminal district court for the parish of Orleans, be prohibited from executing or enforcing the judgment quashing the indictment in this case and discharging the accused; and he is ordered to reinstate the case on the docket of the court, in order that it may be fixed for trial and be tried according to law.

See dissenting opinions of PROVOSTY and O'NIELL, JJ., 83 South. 639, 641.