YARN *v.* CITY OF ATLANTA *et al.*

No. 16175.   APRIL 14, 1948.

R. P. *Johnston* and *Vester M. Ownby*, for plaintiff.

J. C. *Savage*, J. C. *Murphy*, J. M. B. *Bloodworth*, and *John E. Feagin*, for defendants.

DUCKWORTH, Presiding Justice. (After stating the foregoing facts.) Section 75 of the charter of the City of Atlanta (Ga. L. 1874, p. 116) provides that "The police force of the city shall consist of a Chief of Police and such other officers and men as the City Council shall, by ordinance, prescribe." This charter

provision specifically requires that the officers and men comprising the police force shall be prescribed by ordinance. In 37 Am. Jur. 667, § 52, it is said: "Where the governing statute or charter requires, either expressly or by necessary implication, that the power be exercised by ordinance, it cannot ordinarily be exercised by resolution." The city council is without charter power to provide for city policemen by a mere resolution not adopted in the manner in which ordinances are adopted. The resolution here involved would be ineffectual for the purpose of increasing the personnel of the city police department since under the above-quoted charter provision this would require a city ordinance. The resolution, however, does not even purport to do more than signify the approval by the Mayor and Council of the employment of negro policemen provided they are to be used in negro sections only. While the petition alleges that the resolution is neither an ordinance nor a law, but that it has the force and effect of an ordinance or law, the plain language of the resolution shows that it is not an ordinance or law and is not intended to be such. It appears to be no more than an expression by the Mayor and General Council of their approval of the employment of negro policemen by the city authority having the power to designate the personnel of the police force. By an act approved March 19, 1943 (Ga. L. 1943, p. 1176), it is provided in § 8 that "The Chief of Police shall have the exclusive power, and it shall be his duty to assign all officers and employees of the Police Department to their respective duties, and to make such changes from time to time as he may deem proper and to the best interest of the Police Department of the City. The power herein conferred shall include the power to assign such members of the Police Department, in such numbers as he may choose, to the various and sundry activities of the Department, such as traffic duty, plain clothes duty, detective bureau, the various watches, and the various territories where such members of the Police Department shall work." It is thus made the duty of the Chief of Police to assign policemen to the performance of any duty within the department and confine them to any territory within the city limits which he may think advisable in the exercise of his judgment and discretion. Therefore,

any statement in the resolution of the Mayor and General Council to the effect that negro policemen should be required to work in areas where only colored people reside is no more than a recommendation, since the right thus to assign such policemen is vested by the charter exclusively in the Chief of Police. It is obvious, therefore, that the language of the resolution in this respect constitutes no threat to the petitioner, and any action of the Chief of Police restricting negro policemen to designated areas is authorized by the law and constitutes no ground for legal complaint.

Counsel for the petitioner in his oral argument before this court stated that the petitioner recognized that under the law the city had the right to employ negro policemen, and that the petitioner had no complaint on that account, but that his grounds of complaint were that the resolution should not restrict the negro policemen to sections of the city where only colored people live, but they should be left to work in any section, and the further complaint that negro policemen were not allowed to arrest white people. Upon these two complaints the petitioner asserts that a long list of enumerated constitutional rights of his are imperiled. If it be found that neither of the matters about which he complains is unlawful, then, of course, none of his enumerated rights is violated. The substance of the argument against requiring negro policemen to work only in sections occupied by colored people is that there is no demarcation between the areas occupied by whites and colored. Obviously the petitioner should have no concern about this, since it would be the duty of the Chief of Police to ascertain such lines of demarcation, and if such lines could not be discovered then there could be no restricted areas and the petitioner would be satisfied, since negro policemen would not be restricted to any particular area. The other complaint finds no basis of fact in the resolution. It is entirely silent on whether or not negro policemen would be allowed to arrest a white person. There is incorporated in the petition a letter addressed to the Police Committee of the City Council, signed by the Chief of Police and bearing the same date as the resolution, in which the Chief says that the negro policemen which it is contemplated will be employed will not be

allowed to arrest white persons. Many solid reasons could be stated why such a policy would be wise, but the wisdom of the decisions of the Chief of Police in the performance of his lawful duties is not a matter for judicial review. Under the 1943 charter amendment, the Chief of Police is empowered to assign members of his force to any duty which he chooses, and in the exercise of this power he might assign policemen to duties where no arrests are required and might instruct them to make no arrests. There are no allegations in the petition entitling the petitioner to any relief sought, and the court did not err in sustaining the general demurrer and dismissing the action.

*Judgment affirmed. All the Justices concur.*