20003. BOARD OF COMMISSIONERS OF PEACE OFFICERS ANNUITY & BENEFIT FUND *et al. v.* CLAY *et al.*

SUBMITTED FEBRUARY 11, 1958—DECIDED MARCH 7, 1958— REHEARING DENIED MARCH 21, 1958.

*Cravey & Pentecost, Adams & McDonald,* for plaintiffs in error.

*Moise, Post & Gardner, Allen Post, J. William Gibson,* contra.

ALMAND, Justice. The bill of exceptions assigns error on orders overruling the general and special demurrers to a petition for a declaratory judgment and the writ of mandamus, and granting a mandamus absolute.

The amended petition alleged: that C. C. Clay and four other individuals were, in 1951, and are now employed by the Georgia Public Service Commission as motor-carrier inspectors; that in 1951 they joined the Peace Officers Annuity and Benefit Fund, created under the act of 1950 (Ga. L. 1950, p. 50), and since that time they have paid all dues required of them until May, 1957, when they were informed by the secretary-treasurer of the fund that they were not eligible for membership therein, and the dues that they had paid into the fund were returned to them; and that subsequently, they filed a petition with the board of commissioners to be reinstated as members of the fund and tendered all sums due for membership, but such petition was denied. The petitioners sought to have the court declare their rights as to membership in the fund and grant a writ of mandamus requiring the defendants, as the Board of Commissioners of the Peace Officers Annuity and Benefit Fund of Georgia, to reinstate them as members of said fund.

We will first consider the ruling on the general demurrer. The plaintiffs allege that, as motor-carrier inspectors, they have the authority and are under the duty to see that the provisions of Chapter 68-7 of the Code of Georgia and all other laws regulating the operation of motor vehicles for hire are enforced, it being their duty to stop such motor vehicles operating on the highways of the State, to investigate and determine whether the laws of the State are being complied with, and to find violators and arrest them. They further allege that they have been furnished a certificate by the Public Service Commission, showing their authority to enforce the laws of the State of Georgia; and since their employment, they have fined, arrested, and prosecuted violators of the rules of the commission and the laws of the State; that, by reason of the duties performed by them, they were in 1951, and are now, eligible for membership in the Peace

Officers Annuity and Benefit Fund, in that they devote their full time to the protection of life and property, to the preservation of the public peace, and to the detection of crime. Finally, it is contended that the defendant board is estopped by reason of their conduct to deny that the plaintiffs are members of the fund.

The controlling question is whether the plaintiffs are "peace officers" as defined in the act of 1950, supra. Section 8 of that act defines the term "peace officer" as "all peace officers who are employed by the State of Georgia, or any subdivision or municipality thereof, who are required by the term of their employment, whether by election or appointment, to give their full time to the preservation of public order, or the protection of life and property, or the detection of crime in the State of Georgia, or any political subdivision or municipality thereof, and shall include all convict guards and wardens of county or State camps [who] shall be entitled to all the benefits, privileges and responsibilities provided under this act." This definition restricts the general class of peace officers, other than convict guards and wardens, to those who give their full time either to the preservation of public order, or to the protection of life and property, or to the detection of crime; convict guards and wardens of county and State camps are specifically included within the definition. This specific inclusion of guards and wardens clearly shows that the intent of the legislature was to exclude from the definition of "peace officer" public employees or officers who, incidental to the primary duties of their employment, occasionally perform some of the services of a police officer. The General Assembly, in classifying the three phases of work of the peace officer, used descriptive words in their broad and generally accepted meaning. "Public order" means the tranquility and security which every person feels under the protection of the law, a breach of which is an invasion of the protection which the law affords. State v. Mancini, 91 Vt. 507 (101 Atl. 581); State v. Brooks, 146 La. 325 (83 So. 637); People v. Bissonette, 327 Mich. 349 (42 N. W. 2d 113). To preserve the public peace means to secure that quiet and freedom from disturbance which is guaranteed by the law. Neuendorff v. Duryea, 52 How. Prac. Rep. (N. Y.) 267. The rights of "life" and "property" embrace every right of the citizen which the law protects, and includes all liberties, whether

personal, civil or political. Gillespie *v.* People, 188 Ill. 176 (58 N. E. 1007). A crime or misdemeanor is defined by Code § 26-201 as consisting of "a violation of a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence." The detection of crime means the investigation and discovery of violators of all public laws. See *Barnett* v. *City of Atlanta,* 109 *Ga.* 166, 169 (34 S. E. 322).

The powers of all public officers are defined by law. Code § 89-903. Where the law creates an office, one holding such office has no authority to perform any act not legitimately within the scope of such authority. *Walker* v. *Ga. Ry. &c. Co.,* 146 *Ga.* 655 (92 S. E. 57); *Decatur County* v. *Roberts,* 159 *Ga.* 528 (126 S. E. 460); *Boykin* v. *Martocello,* 194 *Ga.* 867 (22 S. E. 2d 790). The authority of the plaintiffs to act as peace officers must be found in some public law. Under Code §§ 68-520 and 68-626, the Public Service Commission is authorized to employ such persons as may be necessary, in their discretion, for the proper enforcement of the laws relating to motor contract carriers and motor common carriers. Code § 68-708 provides: "It shall be the duty of the law enforcement officers of the State and of each county, city, or other municipality to see that the provisions of this Chapter and all other laws regulating the operation of such vehicles are enforced within their respective jurisdictions; and to this end such officials, as well as the Public Service Commission and its representatives employed under this Chapter, *are hereby given the authority and the power to check all motor vehicles for hire using the public highways, and determine whether they have complied and are complying with the provisions of this Chapter* and all other laws regulating the use of the public highways by motor vehicle carriers for hire." (Italics ours.) Under Rule 7 of the Motor Carrier Rules and Safety Regulations issued by the Public Service Commission, commissioners or representatives of the commission authorized to make inspections and to enforce these rules and regulations, are provided with a card of identification, and, upon presentation of this card, an inspector has the right to enter into or upon any motor vehicle being operated under the laws to which the rules apply for the purpose of ascertaining whether or not the carrier is complying with the pro-

visions of the law and the rules of the commission, and such inspectors are required to report all irregularities to the commission. It thus appears that the duties of the inspectors employed by the commission relate only to the enforcement of the laws and the rules of the Public Service Commission, and that their sole power is to *check* and *determine* whether the motor vehicles inspected are complying with the laws regulating their use of the public highways. Therefore, the allegations of the petition that the plaintiffs, in the exercise of their authority as motor carrier inspectors, have apprehended suspected violators of the rules of the Public Service Commission and of the laws of the State "and have fined, arrested, and prosecuted violators," are legal conclusions, unsupported by any express legal authority. See *Bennett* v. *Public Service Comm.*, 160 *Ga.* 189, 192 (127 S. E. 612). There is nothing in the law that authorizes the plaintiffs to make any arrest, other than as private citizens for an offense committed in their presence. The provisions of Code § 68-708 merely grant the plaintiffs, as agents of the commission, the power to enforce the laws relating to a restricted class of motor vehicles using the highways. This law does not give such agents any authority to act as "peace officers" in the general sense, either in the preservation of public order, or in the protection of life or property, or in the detection of crime, so as to make them eligible for membership in the Peace Officers Annuity and Benefit Fund. We therefore hold that the plaintiffs, although they give their full time as motor-carrier inspectors for the Georgia Public Service Commission, are not "peace officers" within the definition of such officers as contained in section 8 of the act of 1950, supra, p. 53, and are not eligible for membership in said fund.

■ The contention of the plaintiffs that the defendant board is estopped to question the right of the plaintiffs to qualify as members of the said fund, by reason of their previous membership and the acceptance by the board of their dues for a period of several years, is settled adversely to them by the recent ruling of this court in *McCallum* v. *Almand*, 213 *Ga.* 701 (100 S. E. 2d 924).

From what has been said above, it was error to overrule the general demurrers of the defendants to the petition as amended.

The subsequent grant of the writ of mandamus absolute was nugatory.

*Judgment reversed. All the Justices concur, except Duckworth, C. J., and Candler, J., who dissent.*