25490. FLEMING v. MADDOX et al.

ARGUED OCTOBER 15, 1969—DECIDED NOVEMBER 12, 1969.

*Webb, Parker & Ferguson, John Tye Ferguson,* for appellant.
*Clifford Seay,* for appellees.

GRICE, Justice. The issue here is whether the appellant qualified for membership in the Peace Officers' Annuity and Benefit Fund, which was created by Georgia Laws 1950, page 50.

J. C. Fleming raised this issue in an action in the Superior Court of Fulton County against Honorable Lester G. Maddox and others, constituting the Board of Commissioners of that Fund, and its treasurer.

The complaint alleged in essence that the plaintiff became a member of the Peace Officers' Annuity and Benefit Fund in 1951; that he has complied with all rules and regulations; and that on May 8, 1957, he was notified that he was no longer a member. The complaint prayed for mandamus absolute requiring the defendants to approve his application for membership and to reinstate him retroactively to the time he was originally accepted as a member.

The defendants filed their response in which they denied that he was a peace officer.

The parties stipulated for trial without a jury and for the evidence to be that taken in case Number B-8842, Fulton Superior

Court. Following the introduction of such evidence, the trial court entered an order denying the relief sought and rendered judgment for the defendants.

The appeal is from that judgment.

The Act in effect in October 1951, when the appellant avers that he properly sought and was admitted into membership in such fund, defined the term "peace officer," as "all peace officers who are employed by the State of Georgia, or any subdivision, or municipality thereof, who are required by the term of their employment . . . to give their full time to the preservation of public order, or the protection of life and property, or the detection of crime in the State of Georgia, or any political subdivision or municipality thereof, and shall include . . . [convict guards and wardens of county and state camps]." Ga. L. 1950, pp. 50, 53; 1951, pp. 472, 473-474.

Thus, in essence, this statute contemplates that "peace officers" eligible for membership in the Fund are those who devote their full time to (1) the preservation of public order, (2) or the protection of life and property, (3) or the detection of crime.

In discussing this definition, this court in *Board of Commissioners of Peace Officers Annuity & Benefit Fund v. Clay,* 214 Ga. 70, 72 (102 SE2d 575), made the following observation: "The General Assembly, in classifying the three phases of work of the peace officer, used descriptive words in their broad and generally accepted meaning. 'Public order' means the tranquillity and security which every person feels under the protection of the law, a breach of which is an invasion of the protection which the law affords. [Citations.] To preserve the public peace means to secure that quiet and freedom from disturbance which is guaranteed by the law. [Citation.] The rights of 'life' and 'property' embrace every right of the citizen which the law protects, and includes all liberties, whether personal, civil or political. [Citation.] . . . The detection of crime means the investigation and discovery of violators of all public laws. [Citation.]"

In determining whether a person was a peace officer as contemplated by the above statute, this court has stressed the duties which the law imposed upon him.

In *Vandiver v. Manning*, 215 Ga. 874 (114 SE2d 121), this court held (one Justice dissenting) that an adult probation officer was such a peace officer. The opinion stated that "The determination of whether or not the plaintiff was a peace officer as thus defined . . . must be made by reference to the duties imposed on him by law at that time." P. 876. After reciting the plaintiff's duties, including the power to arrest for violation of probation, it also said that "In the present case, no consideration is necessary of the evidence introduced in behalf of the plaintiff, except to observe that the evidence shows that he performed the duties which he was authorized to perform under the law. In determining the question of whether or not the plaintiff was a peace officer authorizing his membership in the fund, the authority of the plaintiff to act as a peace officer 'must be found in some public law,' " citing *Board of Commissioners v. Clay*, 214 Ga. 70, 73, supra, and quoting therefrom. P. 877.

The authority which the appellant possesses as a member of the Atlanta Police Department is found in the charter granted by the General Assembly to the City of Atlanta. It provides that the police force of that city "shall consist of a Chief of Police and such other officers and men as the City Council shall, by ordinance, prescribe." Ga. L. 1874, pp. 116, 135. It further provides that such policemen "shall take an oath faithfully and impartially to discharge the duties imposed on them by law and the city ordinances." Ga. L. 1874, pp. 116, 135. As to arrests, the charter also declares that "It shall be their duty to make arrests, in the manner prescribed by law, of persons violating any penal law of this State. They shall perform such other duties as may be imposed by law of the State, or ordinance of the City Council." Ga. L. 1874, pp. 116, 135.

In addition to the foregoing statutory duties there are those which the Chief of Police may require. The charter of the City of Atlanta provides that he "shall have the exclusive power, and it shall be his duty to assign all officers and employees of the Police Department to their respective duties and to make such changes from time to time as he may deem proper and to the best interest of the Police Department of the City. The power

herein conferred shall include the power to assign such members of the Police Department, in such numbers as he may choose, to the various and sundry activities of the Department, such as traffic duty, plain clothes duty, detective bureau, the various watches, and the various territories where such members of the Police Department shall work." Ga. L. 1943, pp. 1176, 1183. This court has held that this statute authorizes the Chief of Police "to assign members of his force to any duty which he chooses, and in the exercise of this power he might assign policemen to duties where no arrests are required and might instruct them to make no arrests." *Yarn v. City of Atlanta,* 203 Ga. 543, 547 (47 SE2d 556).

In the instant case, there is no dispute but that the appellant is a member of the Atlanta Police Department. He was sworn as such and was issued a badge, pistol and blackjack. The evidence was that he was subject to all orders of the Chief of Police, and to the rules and regulations of the department. The Chief testified that he was authorized to make arrests.

However, it is contended by the defendants that the appellant does not actually perform the three activities specified in the statute but that his duties are technical and mechanical functions relating to maintenance and operation of the radio. They argue that if mere employment by the Police Department is sufficient, then all employees of the Atlanta Police Department, including janitors, mechanics, secretaries, and maintenance men, qualify.

We cannot agree with this contention.

The appellant is a law enforcement officer. He took an oath as such and was assigned the duties of communications engineer. These duties are just as vital to preserving public order, protecting life and property, and detecting crime as the duties performed by a patrolman or detective. They involve the very nerve center for law enforcement in the city, giving the necessary plan, coordination and direction to the entire operation. This is not true as to the duties of all employees.

He supervises the installation and operation of all radio equipment of the department so as to maintain communications between the headquarters station and all mobile units and

transistors operating in the city. In doing this he works throughout the entire city and at all hours of the day or night. On occasion he has attempted to locate and arrest a person interfering with the communications system. He has dispatched messages over this system. He attended an FBI law enforcement training school on instruction of the Chief of Police.

His job classification calls for skilled technician work. He testified that the classification, compiled by the city personnel board, describes part of his duties, and that he also has the duty to do whatever the Chief directs. Asked whether the plaintiff has any police duty, that is, the enforcement of the law, the Chief replied, "Well, as an employee of this department, he would be subject to all the rules and regulations and the duties of this Department, but his specific assignment is not as a patrolman."

As we view the evidence as to the duties imposed upon the appellant by law, those assigned to him by the Chief of Police, and those actually performed by him, they fall within the statutory definition of "peace officer," to wit, "full time to the preservation of public order, or the protection of life and property, or the detection of crime. . ."

The appellant's classification by the personnel board as a civilian employee, his membership in the city's general pension fund, and the fact that he does not wear a uniform or receive a uniform allowance are immaterial in determining whether he is a "peace officer" within the statutory definition.

He does not come within the category of those public employees or officers who, incidental to the primary duties of their employment, occasionally perform some of the services of a police officer. Although the appellant stated on a classification questionnaire which was introduced in evidence that among his responsibilities was the installation, operation and maintenance of mobile radio equipment for other departments of the city and county, there was no evidence that he actually performed any such services for any department other than the Police Department. Furthermore, such responsibilities are not imposed by law upon the plaintiff as a member of the Police Department, nor was there any evidence that they had been assigned him by the Chief of Police.

On the occasions when this court has ruled that the individuals were not peace officers as contemplated by the statute in question (Ga. L. 1950, pp. 50, 53; 1951, pp. 472, 473-474), the facts were essentially different from those here. None was employed by the State or any subdivision or municipality thereof to perform full time the services spelled out in the statutory definition of "peace officer."

We refer to those cases.

In *McCallum v. Almand*, 213 Ga. 701 (100 SE2d 924), the plaintiff was a county commissioner who, along with his colleagues also had been designated a county policeman. He devoted his full time to his duties as county commissioner, made no arrests and received no compensation as a county policeman. Apparently he was a police officer in name only.

In *Board of Commissioners v. Clay*, 214 Ga. 70, supra, the plaintiffs were motor carrier inspectors, employed by the Public Service Commission, and were not authorized by law to make arrests.

In *Vandiver v. Endicott*, 215 Ga. 250 (109 SE2d 775), the plaintiff was Fire Marshal of the City of Atlanta. He was vested with "the powers of a police officer," but was primarily engaged in fire prevention and fire safety and enforcing the laws and ordinances relating thereto, and his authorized law enforcement activities were limited to that only.

In *Connors v. Vandiver*, 215 Ga. 371 (110 SE2d 630), the plaintiff, an employee of a county health department, devoted his full time to the suppression of vice, but had no legal authority to do so.

In *Vandiver v. Carlin*, 217 Ga. 515 (123 SE2d 548), the plaintiff was a deputy sheriff who performed law enforcement duties primarily in a mill village by employment of the mill owner, but occasionally performed such duties elsewhere. He was not required by the sheriff of the county to give his full time to the work of a peace officer, but was required by the terms of his employment by the mill to perform such duties.

Each of those cases is distinguishable from the one here.

We conclude that the evidence demanded a judgment in favor of the appellant.

*Judgment reversed. All the Justices concur.*