848 P.2d 1105

**Jason BAPTISTE, Plaintiff–Appellant,**

v.

**CITY OF LAS CRUCES and Elizabeth Carver, Defendants–Appellees.**

**No. 13206.**

Court of Appeals of New Mexico.

Feb. 10, 1993.

Mario A. Esparza, Las Cruces, for plaintiff-appellant.

Robert Kelley, Wendell Mark Sims, Las Cruces, for defendants-appellees.

## OPINION

HARTZ, Judge.

Pursuant to the New Mexico Tort Claims Act, NMSA 1978, §§ 41–4–1 to –4–29 (Repl.Pamp.1989), Plaintiff sued the City of Las Cruces and its animal control officer (ACO), Elizabeth Carver, for false imprisonment and false arrest allegedly resulting from the issuance of a citation by Carver. The Defendants sought dismissal of the charge on several grounds, including failure to state a claim upon which relief can be granted. *See* SCRA 1986, 1–012(B)(6). To establish this last ground, Defendants relied on a three-step analysis: (1) they are immune from suit under the Act unless immunity is waived by a provision of the Act, NMSA 1978, § 41–4–4(A); (2) the Act waives immunity for liability for false imprisonment and false arrest only if caused by law enforcement officers acting within the scope of their duties, NMSA 1978, § 41–4–12; and (3) a Las Cruces ACO is not a "law enforcement officer" as defined in the Act, NMSA 1978, § 41–4–3(D) (Cum. Supp.1992).

■ At the hearing on the motion to dismiss, the parties stipulated to the admission of Exhibit 1, a document setting forth the duties and qualifications of an ACO.[1] This consideration of evidence outside the pleadings converted the motion to dismiss into a motion for summary judgment pursuant to SCRA 1986, 1–056. *See Transamerica Ins. Co. v. Sydow*, 97 N.M. 51, 54, 636 P.2d 322, 325 (Ct.App.1981). Defendants were entitled to judgment only if there was no genuine issue as to a material fact. *See* SCRA 1–056(C). Finding that Carver was not a law enforcement officer, the district court dismissed the complaint with prejudice. Plaintiff appeals. We reverse because on the present record there is a genuine issue of fact regarding whether a Las Cruces ACO is a law enforcement officer under the Act.

■ Section 41–4–3(D) states:
[L]aw enforcement officer means any full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor[.]

We read this language in light of the traditional duties of law enforcement officers, *see Anchondo v. Corrections Dep't*, 100 N.M. 108, 110, 666 P.2d 1255, 1257 (1983); *Vigil v. Martinez*, 113 N.M. 714, 720, 832 P.2d 405, 411 (Ct.App.1992), and with regard to the legislative intent "to include within the definition of law enforcement officer * * * only those persons whose principal duties include those of a direct law enforcement nature." *Anchondo*, 100 N.M. at 111, 666 P.2d at 1258. "Principal duties" are "those duties to which employees devote the majority of their time." *Id.* at 110, 666 P.2d at 1257; *accord Vigil v. Martinez*, 113 N.M. at 720, 832 P.2d at 411.

We look to the duties of a Las Cruces ACO to determine whether an ACO comes within the statutory definition of "law en-

1. In their brief on appeal Defendants also rely on a Las Cruces municipal ordinance. But Defendants have not indicated where the ordinance appears in the record on appeal or, alternatively, how we can take judicial notice of the ordinance. Ordinarily such judicial notice would be improper. *See Coe v. City of Albuquerque*, 81 N.M. 361, 364, 467 P.2d 27, 30 (1970). We therefore disregard the ordinance.

forcement officer." Exhibit 1 contains the following pertinent information:

POSITION TITLE: Animal Control Officer

POSITION SUMMARY: Answers complaints regarding animals and insures compliance with City ordinances.

SPECIFIC CERTIFICATION AND/OR LICENSE REQUIREMENTS: Valid New Mexico Class V Operator's License; free of felony convictions; Radio Operator's License.

EDUCATION—MINIMUM REQUIREMENTS: High school diploma or equivalent.

EXPERIENCE—MINIMUM REQUIREMENTS: Two and one-half (2½) years experience in working with domestic animals on farm, in zoo, in veterinarian clinic, etc.

ABILITIES AND SKILLS—MINIMUM REQUIREMENTS: Must be able to write clear and accurate reports.

JOB DESCRIPTION: Answers complaints regarding animals. Picks up dead or injured animals or strays, including cats, dogs and other animals. Visits homes to inspect license, vaccination certificates and sick dogs or cats. Institutes quarantines in dog bite cases. Investigates complaints concerning treatment of animals or noncompliance with animal ordinances. Prepares cases and appears in court in legal action. Issues citations in cases or violations of ordinances. Maintains records and prepares periodic and special reports. May be required to destroy animals in the field. Performs other duties as assigned.

WORKING CONDITIONS—Works outside in all kinds of weather. May be exposed to the possibility of bruises, cuts and animal bites. Requires moderately light physical effort.

■ For an ACO to come within the statutory definition of "law enforcement officer," the ACO's principal duties under law must be "[ (a) ] to hold in custody any person accused of a criminal offense, [ (b) ] to maintain public order or [ (c) ] to make arrests for crimes[.]" Section 41–4–3(D). It

suffices if an ACO's principal duties are either (a) or (b) or (c). We will not distort the plain language of the statute to adopt Defendants' contention that the statutory definition requires an ACO's principal duties to be either both (a) and (b) or both (a) and (c).[2] Plaintiff makes no claim that an ACO's principal duties include holding persons in custody or making arrests. Thus, the sole question is whether an ACO's principal duties under law are "to maintain public order."

The Tort Claims Act does not define the phrase "maintain public order." We note, however, that the statutory definition of law enforcement officer distinguishes between the duty "to maintain public order" and the duty "to make arrests for crimes." Section 41–4–3(D). This distinction clarifies that the task of maintaining public order can be accomplished without the power to arrest.

Some additional guidance is provided in decisions from other jurisdictions. The Georgia Supreme Court said, " 'Public order' means the tranquility and security which every person feels under the protection of the law, a breach of which is an invasion of the protection which the law affords." *Board of Comm'rs of Peace Officers Annuity & Benefit Fund v. Clay*, 214 Ga. 70, 102 S.E.2d 575, 577 (1958). Another court has written, "A breach of the peace is described as 'a violation of public order; the offense of disturbing the public peace.' " *State v. Mancini*, 91 Vt. 507, 101 A. 581, 583 (1917). This statement suggests that the terms "public order" and "public peace" capture the same concept and a violation of either is a breach of the peace. We thus consider the following dictionary definition of "public peace": "The peace or tranquility of the community in general; the good order and repose of the people composing a state or municipality. That invisible sense of security which every man feels so necessary to his comfort, and for which all governments are instituted." *Black's Law Dictionary* 1130 (6th ed. 1990); *accord People v. Bissonette*, 327

**2.** Defendants find great significance in omission of the comma after "public order." But the New Mexico legislature typically omits the comma after the next-to-last item in a series.

Mich. 349, 42 N.W.2d 113, 116 (1950); *see Mancini,* 101 A. at 583 ("[P]ublic peace is that sense of security and tranquility, so necessary to one's comfort, which every person feels under the protection of the law."); *State v. Brooks,* 146 La. 325, 83 So. 637, 639 (1919) ("Public peace is public tranquility and quiet order and freedom from agitation or disturbance which is guaranteed by the law.").

 Although the guidance provided by these authorities is sparse and imprecise, it suggests that the "public order" is disturbed when dogs are barking, biting, knocking over garbage cans, etc. *Cf. Commonwealth v. Koch,* 288 Pa.Super. 290, 431 A.2d 1052, 1056–58 (1981) (continuous barking of dogs housed in kennel in rural community is not "of such a nature as to 'break the public peace'"). On the other hand, an ACO ordinarily is not maintaining public order when picking up dead or injured animals, inspecting licenses and vaccination certificates, or enforcing laws against mistreatment of animals.

Thus, Exhibit 1 by itself cannot tell us whether a Las Cruces ACO comes within the definition of "law enforcement officer" in the Tort Claims Act. Two questions remain. First, how much time does the ACO devote to the various duties? An ACO is a "law enforcement officer" only if the majority of the ACO's time is devoted to the duties of maintaining public order. *See Anchondo,* 100 N.M. at 110, 666 P.2d at 1257. Second, insofar as a duty of an ACO involves maintaining public order, is the duty one traditionally performed by law enforcement officers? If the duty is not a traditional duty of law enforcement officers, it does not come within the meaning of "maintaining public order" in the statutory definition of "law enforcement officer." *See id.* For example, responding to complaints of barking or biting dogs is not "maintaining public order" under the statute unless law enforcement officers traditionally have engaged in that activity. Although we assume that they have, we have found no definitive literature and the record in this case is silent on the matter.

In sum, on the record before us, we cannot determine whether duties with respect to the maintenance of public order constitute the principal duties of a Las Cruces ACO. Because the sole evidence on the issue (the stipulated exhibit) is inadequate to establish that a Las Cruces ACO is not a law enforcement officer within the meaning of the Tort Claims Act, we must reverse the district court's dismissal and remand for further proceedings. Our reversal does not foreclose the district court from granting summary judgment on the law-enforcement-officer issue after the parties submit additional evidence to that court.

IT IS SO ORDERED.

CHAVEZ and FLORES, JJ., concur.