2009 VT 28

## State of Vermont v. Michael Colby

## State of Vermont v. Boots Wardinski

[972 A.2d 197]

Nos. 07-317 & 07-376

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed March 13, 2009

*Robert M. Butterfield,* Caledonia County State's Attorney, and *Kyle Sipples,* Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*David C. Sleigh* of *Sleigh & Williams,* St. Johnsbury, for Defendants-Appellants.

¶ 1. **Johnson, J.** Pursuant to Vermont Rule of Appellate Procedure 5(a), the district court has, with the parties' consent, certified two questions for our review in connection with the prosecution of defendants Boots Wardinski and Michael Colby for disorderly conduct. The certified questions are: "[c]an the State obtain a conviction under 13 V.S.A. § 1026(4) without proving that uninvited political speech actually caused a substantial disruption of a lawful assembly[,]" and "[c]an the State obtain a conviction under 13 V.S.A. § 1026(4) for attempting to recklessly create a public inconvenience by disturbing a lawful assembly?" We agree with defendants that the prosecutions must be dismissed. The State must — but cannot — prove that defendants' speech caused a substantial disruption of a lawful assembly. Because our answer to the first certified question is dispositive of the case, we do not address the second question.

¶ 2. For purposes of this appeal, the parties have stipulated to the following facts. On June 5, 2006, defendants Boots Wardinski and Michael Colby attended the St. Johnsbury Academy commencement ceremony. Both defendants had tickets to the invitation-only ceremony at which John Negroponte, then the United States Director of National Intelligence, delivered a speech.[1] Approximately two minutes into Negroponte's address, defendant Wardinski stood from his seat and shouted that Negroponte "had blood on his hands" and invited the audience to join him in

---

[1] Negroponte's son was a member of the graduating class of 2006 at St. Johnsbury Academy.

walking out on the commencement address. At some point prior to defendant Wardinski's remarks, defendant Colby also stood and shouted at Negroponte. Academy staff and police officers promptly asked both defendants to leave and escorted them from the premises without resistance or further incident. Despite these interruptions, which lasted no more than thirty seconds, Negroponte delivered his speech in its entirety.[2]

¶ 3. The record of the hearing on defendants' motion to dismiss in the district court showed that both the Academy and the police anticipated that some attendees at the graduation ceremony would attempt to interrupt Negroponte's speech. The planned response was to immediately remove and arrest anyone interrupting the speech. There was also evidence to suggest that defendant Wardinski was voluntarily leaving the assembly when the police officer reached him to escort him from the premises.

¶ 4. The State's information charged that both defendants "recklessly created a risk of public inconvenience or annoyance when [they], without lawful authority, attempted to disturb a lawful assembly or meeting of persons, in violation of 13 V.S.A. § 1026(4)."[3] Defendants contend that the statute must be read to protect defendants' right to freedom of speech under the First Amendment.[4] To do so, defendants argue that the State must prove an additional element not specified in the statute — namely, that their actions substantially impaired the effective conduct of a lawful assembly. According to defendants, because the State cannot prove this element, the prosecution must be dismissed.

---

[2] The parties have stipulated that Negroponte's speech "was standard inspirational fare and not overtly political."

[3] Section 1026(4) provides, in pertinent part: "[a] person who, with intent to cause public inconvenience, or annoyance or recklessly creating a risk thereof . . . [w]ithout lawful authority, disturbs any lawful assembly or meeting of persons . . . shall be imprisoned for not more than 60 days or fined not more than $500.00 or both."

[4] The First Amendment provides: "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I. The First Amendment limits not only the law-making authority of the federal government but also, pursuant to the Fourteenth Amenmdent, that of the states. See, e.g., *Thornhill v. Alabama*, 310 U.S. 88, 95 (1940) ("The freedom of speech . . . which [is] secured by the First Amendment against abridgment by the United States, [is] among the fundamental personal rights and liberties which are secured to all persons by the Fourteenth Amendment against abridgment by a State.").

Defendants further argue that charging this crime as an "attempt" crime does not remove the constitutional problem.

■ ¶ 5. One of the legal dilemmas raised by disorderly conduct statutes is the breadth of the conduct and speech that they prohibit when considered against the First Amendment guarantee of freedom of speech. Such statutes have often been challenged on grounds of vagueness and overbreadth. In this case, defendants do not claim that the statute is too vague to give adequate notice of what conduct is prohibited. See, e.g., *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."). Instead, they contend that the statute sweeps too broadly in embracing speech that is protected by the First Amendment. Defendants suggest, however, that the statute is susceptible to a constitutional narrowing that will afford them their rights and save the statute. The State responds that defendants' rights must be tempered by the right of others to peaceably and lawfully assemble and that the statute protects against the unlawful disturbance of the right to assemble.[5]

■ ¶ 6. We have not previously considered whether § 1026(4) impermissibly burdens speech; however, in *State v. Read*, we narrowed another section of the disorderly conduct statute proscribing the use of abusive speech, § 1026(3), in response to a facial challenge to its constitutionality. 165 Vt. 141, 148, 680 A.2d 944, 948 (1996). Section 1026(3) states, in pertinent part: "[a] person who, with intent to cause public inconvenience, or annoyance or recklessly creating a risk thereof . . . [i]n a public place uses abusive . . . language . . . shall be imprisoned for not more than 60 days or fined not more than $500.00 or both." We reconciled the statute with free speech guarantees by holding that the provision "is properly construed as proscribing only 'fighting words.' Prosecution under that provision is appropriate only when a defendant's spoken words, when directed to another person in a public place, 'tend to incite an immediate breach of the peace.' "

---

[5] We note that "[t]he right of peaceable assembly is a right cognate to . . . free speech . . . and is equally fundamental." *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937).

*Read*, 165 Vt. at 148, 680 A.2d at 948 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)).

■ ¶ 7. Our decision in *Read* provides a framework for analyzing our disorderly conduct statute in light of defendants' overbreadth challenge. Assuming that we find the statute subject to overbroad application, we must first seek to construe it in a manner that is constitutional. See *id.* at 146, 680 A.2d at 947 ("[T]his Court is obligated to narrow and limit the statute in light of the protections guaranteed by the United States . . . constitution[]."). We will rehabilitate statutes where there is a readily apparent construction that renders the statute constitutional. *Id.*

■ ¶ 8. We turn first to whether § 1026(4) is overbroad on its face, meaning that it is drafted in such a manner that it proscribes a substantial amount of constitutionally protected speech when compared to the law's legitimate applications. See *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973); *State v. Cantrell*, 151 Vt. 130, 133-34, 558 A.2d 639, 641-42 (1989). Section 1026(4) reflects the State's legitimate interest in preserving the right of peaceful assembly by imposing sanctions on those who seek to hinder others' exercise of this right through disturbances. Read literally, however, § 1026(4) purports to prohibit all disturbances of lawful assemblies or meetings — including those occasioned by speech — without regard to the severity of the disruption. The statutory text treats brief outbursts of speech — the content of which may merely be objectionable to the sensibilities of some (or all) of those assembled — the same as prolonged, voluminous speech that, for example, drowns out the primary speaker, preventing audience members from hearing the speaker. If we were to apply this statute according to its terms, it would criminalize "heckling, interrupting, harsh questioning, . . . booing," and all manner of speech that has been tolerated pursuant to the rights accorded to the peoples of free societies. *In re Kay*, 464 P.2d 142, 147 (Cal. 1970) (noting also that such speech, though perhaps rude, "can nonetheless advance the goals of the First Amendment"). Thus, we find that § 1026(4), as worded, impermissibly sanctions a substantial amount of protected speech even when considered in relation to its legitimate scope.

■ ¶ 9. A narrowing interpretation may, nevertheless, render § 1026(4) constitutional. The central constitutional tension presented by § 1026(4) arises from a clash of two fundamental First

Amendment rights — freedom of speech and freedom of assembly. In construing the statute, we must ensure that neither fundamental right is unnecessarily sacrificed for the sake of the other. We are not without guidance in our endeavor. The Supreme Court of California declared a substantially similar statute susceptible to overbroad application. See *Kay*, 464 P.2d at 146, 149. The California statute read as follows: "[e]very person who, without authority of law, willfully disturbs . . . any assembly or meeting . . . is guilty of a misdemeanor." *Id.* at 149 (quotation omitted). Like § 1026(4), the California statute made no allowance for minor disturbances occasioned by expressions of free speech; therefore, the California Supreme Court held that "if the section were literally applied with the breadth of coverage that its terms could encompass, the statute would be constitutionally overbroad and could not stand." *Id.* Instead of invalidating the statute in its entirety, the California Supreme Court construed it to prohibit only substantial impairments. *Id.* at 150.

¶ 10. We are persuaded to construe our statute similarly. Thus, to show that a defendant violated § 1026(4), the State must prove that a defendant's conduct — "and *not* the content of the activity's expression — substantially impair[ed] the effective conduct of a meeting." *Id.* Narrowing the reach of § 1026(4) in such a fashion strikes the proper balance between the two fundamental rights implicated by the statute.

¶ 11. The State argues, however, that a narrowing of the statute to require substantial impairment gives inadequate consideration to the context of the event in which the disruption occurs. Indeed, in interpreting 1906 P.S. § 5871, a precursor to § 1026(4), we have held that factors relevant to a determination of whether a defendant's conduct substantially impairs the effective conduct of a meeting include "the nature and character of each particular kind of meeting, . . . the purposes for which it is held, and . . . the usage and practice governing such meetings." *State v. Mancini*, 91 Vt. 507, 511, 101 A. 581, 583 (1917) (quotation omitted). In light of the State's concerns, and consistent with our holding in *Mancini*, we hold that the fact finder, in determining whether a defendant's conduct substantially impairs the effective conduct of a meeting, must assess "the *actual* impact of that misconduct on the course of the meeting," *Kay*, 464 P.2d at 151 (emphasis added). Naturally, what amounts to a substantial dis-

turbance in one setting may not in another, and the fact finder must take this into account. See *id.* at 150. In doing so, however, the fact finder may not base its decision on mere assertions of those present that they were "disturbed." *Id.* at 151. The standard is an objective one: the fact finder may not consider the subjective effect of the content of a defendant's expressive conduct on those assembled, but must instead evaluate it in terms of "timing, duration or intensity." *State v. Linares*, 655 A.2d 737, 744 (Conn. 1995); accord *Kay*, 464 P.2d at 149 ("The right to free expression articulated through 'disturbances' that are no more than announced differences in ideology or beliefs lies at the heart of the First Amendment; governmental prohibition of such activity, under any statutory scheme, could not constitutionally be countenanced.").

¶ 12. Accordingly, substantial impairment of the effective conduct of a meeting includes conduct that causes a lawful meeting to terminate prematurely. Cf. *State v. Schwing*, 328 N.E.2d 379, 386 (Ohio 1975) (holding that willful interferences or disturbances which have the effect of "caus[ing] a lawful assemblage to terminate in an untimely manner" are not constitutionally protected). We also agree with the proposition set forth by other courts that a defendant's conduct amounts to a substantial impairment of a meeting where the defendant makes numerous and sustained efforts to disrupt a meeting after being asked to desist. Compare *State v. Hardin*, 498 N.W.2d 677, 678, 681 (Iowa 1993) (concluding that there was substantial impairment where defendants and others interrupted private fundraising rally with "three to five minutes" of loud chanting that "effectively stopped the meeting" and ignored repeated requests of event organizers to desist), with *Dempsey v. People*, 117 P.3d 800, 809-10 (Colo. 2005) (en banc) (concluding that there was no significant disruption of campaign rally where, among other things, there was no evidence that the rally stopped or was interrupted by the defendant speaking into a bullhorn and where the defendant ceased using bullhorn after being so ordered by the police).

¶ 13. Applying these standards to the case at bar, we hold that, as a matter of law, defendants' actions did not substantially impair the effective conduct of the St. Johnsbury Academy's commencement ceremony. Indeed, the State conceded as much by charging this as an "attempt" crime. As part of the approximately

three-hour-long graduation ceremony, Negroponte delivered a speech, which lasted for over eight minutes and was delivered in its entirety. This speech was interrupted for less than thirty seconds by defendants' remarks. Moreover, the record indicates that defendant Wardinski urged the audience to join him in walking out of the ceremony in protest of Negroponte's presence and was in the process of leaving the ceremony voluntarily when he was apprehended.[6] Both defendants left the site of the graduation ceremony upon being asked and without further incident, whereupon they were arrested. Such de minimis disturbances, even if rude and out of place in the context of a commencement ceremony, cannot serve as the basis for criminal liability without running afoul of the First Amendment. Cf. *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949) ("[F]reedom of speech, though not absolute, is nevertheless protected against . . . punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." (citation omitted)).

¶ 14. We note that the State contends that the substantial-impairment prong of *Kay* is satisfied by virtue of the fact that defendants are charged with attempted disorderly conduct — a contention we find unavailing. The State merely speculates that defendants would have continued, or escalated, their protest to such an extent as to create a substantial impairment of the commencement ceremony. To satisfy constitutional concerns, we have held here that a fact finder, in assessing whether a defendant's conduct substantially impaired the effective conduct of a meeting, must consider the *actual impact* of the conduct on the meeting — conjecture will not suffice. There was no substantial impairment based on the agreed upon facts. The State cannot even charge that there was a disturbance. The interruption was minor. Negroponte's speech was hardly stopped, and the speakers were quickly, and without resistance, removed from the location. If we use the disorderly conduct statute to punish defendants by not requiring that the disturbance *be* substantial, we would be punishing them for speech in violation of the First Amendment.

¶ 15. Finally, and contrary to the State's assertions, our holding does not "imperil other citizens' rights of free association and

---

[6] It is questionable whether the statute, literally applied, even reaches defendant Wardinski's conduct.

discussion." The Academy acted within its rights when it ejected defendants from the graduation ceremony once they began heckling Negroponte. Cf. *Adderley v. Florida*, 385 U.S. 39, 48 (1966) (noting that "people who want to propagandize protests or views" do not have "a constitutional right to do so whenever and however and wherever they please"). In the context of such a private graduation ceremony, the Academy need not have allowed defendants to "unilaterally alter[] the . . . program and place[] [themselves] and [their] message upon the agenda . . . under the guise of exercising general rights of free speech." *McIntosh v. Ark. Republican Party-Frank White Election Comm.*, 766 F.2d 337, 341 (8th Cir. 1985). Though we are mindful that defendants' remarks likely offended some of the attendees of the graduation, and even caused a brief interruption of the ceremony, without more, the power of the State may not be brought to bear against defendants.

*The charges are dismissed.*