2009 VT 28



State v. Colby, State v. Wardinski (2007-317, 2007-376)

 

2009 VT 28

 

[Filed 13-Mar-2009]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40
as well as formal revision before publication in the Vermont Reports. 
Readers are requested to notify the Reporter of Decisions, Vermont Supreme
Court, 109
 State Street, Montpelier, Vermont05609-0801
of any errors in order that corrections may be made before this opinion goes to
press.

 

 


 2009 VT 28 
 
  


 Nos. 2007-317 & 2007-376
 
  


 State of Vermont
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 District Court of Vermont,
 
 
  
 
 
 Unit No. 3, Caledonia
 Circuit
 
 
  
 
 
  
 
 
 Michael Colby
 
 
 September Term, 2008
 
 
  
 
 
  
 
 
 State of Vermont
  
     v.
  
 Boots Wardinski
 
 
  
 
 
  
 
 
  
  
 
 
 M.
 Kathleen Manley, J. (07-317) 
 Harold E. Eaton, Jr., J.
 (07-376)
 
 
  
 
 
  
 
 Robert M. Butterfield, Caledonia County State’s Attorney, and
Kyle Sipples, Deputy State’s
  Attorney, St. Johnsbury, for Plaintiff-Appellee.

 

David C. Sleigh of Sleigh & Williams, St. Johnsbury, for
Defendants-Appellants.

 

 

PRESENT:  Reiber, C.J.,
Dooley, Johnson, Skoglund and Burgess, JJ.

 

 

¶ 1.            
JOHNSON, J.   Pursuant to Vermont Rule of Appellate
Procedure 5(a), the district court has, with the parties’ consent, certified
two questions for our review in connection with the prosecution of defendants
Boots Wardinski and Michael Colby for disorderly
conduct.  The certified questions are: “[c]an the State obtain a
conviction under 13 V.S.A. § 1026(4) without proving that uninvited
political speech actually caused a substantial disruption of a lawful
assembly[,]” and “[c]an the State obtain a conviction under 13
V.S.A. § 1026(4) for attempting to recklessly create a public
inconvenience by disturbing a lawful assembly?”  We agree with defendants
that the prosecutions must be dismissed.  The State must—but cannot—prove
that defendants’ speech caused a substantial disruption of a lawful
assembly.  Because our answer to the first certified question is
dispositive of the case, we do not address the second question. 

¶ 2.            
For purposes of this appeal, the parties have stipulated to the
following facts.  On June 5, 2006, defendants Boots Wardinski
and Michael Colby attended the St. Johnsbury Academy commencement
ceremony.  Both defendants had tickets to the invitation-only ceremony at
which John Negroponte, then the United States Director of National
Intelligence, delivered a speech.[1] 
Approximately two minutes into Negroponte’s address, defendant Wardinski stood from his seat and shouted that Negroponte
“had blood on his hands” and invited the audience to join him in walking out on
the commencement address.  At some point prior to defendant Wardinski’s remarks, defendant Colby also stood and shouted
at Negroponte.  Academy staff and police officers promptly asked
both defendants to leave and escorted them from the premises without resistance
or further incident.  Despite these interruptions, which lasted no more
than thirty seconds, Negroponte delivered his speech in its entirety.[2]  

¶ 3.            
The record of the hearing on defendants’ motion to dismiss in the
district court showed that both the Academy and the police anticipated that
some attendees at the graduation ceremony would attempt to interrupt
Negroponte’s speech.  The planned response was to immediately remove and
arrest anyone interrupting the speech.  There was also evidence to suggest
that defendant Wardinski was voluntarily leaving the
assembly when the police officer reached him to escort him from the premises.

¶ 4.            
The State’s information charged that both defendants “recklessly created
a risk of public inconvenience or annoyance when [they], without lawful
authority, attempted to disturb a lawful assembly or meeting of persons, in
violation of 13 V.S.A. § 1026(4).”[3]  Defendants contend that the statute
must be read to protect defendants’ right to freedom of speech under the First
Amendment.[4] 
To do so, defendants argue that the State must prove an additional element not
specified in the statute—namely, that their actions substantially impaired the
effective conduct of a lawful assembly.  According to defendants, because
the State cannot prove this element, the prosecution must be dismissed.
 Defendants further argue that charging this crime as an “attempt” crime
does not remove the constitutional problem. 

¶ 5.            
One of the legal dilemmas raised by disorderly conduct statutes is the
breadth of the conduct and speech that they prohibit when considered against
the First Amendment guarantee of freedom of speech.  Such statutes have
often been challenged on grounds of vagueness and overbreadth. 
In this case, defendants do not claim that the statute is too vague to give
adequate notice of what conduct is prohibited.  See, e.g., Connally v. Gen. Const. Co., 269 U.S. 385,
391 (1926) (“[A] statute which either forbids or requires the doing of an act
in terms so vague that men of common intelligence must necessarily guess at its
meaning and differ as to its application violates the first essential of due
process of law.”).  Instead, they contend that the statute sweeps too
broadly in embracing speech that is protected by the First Amendment. 
Defendants suggest, however, that the statute is susceptible to a
constitutional narrowing that will afford them their rights and save the
statute.  The State responds that defendants’ rights must be tempered by
the right of others to peaceably and lawfully assemble and that the statute
protects against the unlawful disturbance of the right to assemble.[5]

¶ 6.            
We have not previously considered whether § 1026(4) impermissibly
burdens speech; however, in State v. Read, we narrowed another section
of the disorderly conduct statute proscribing the use of abusive speech, §
1026(3), in response to a facial challenge to its constitutionality.  165
Vt. 141, 148, 680 A.2d 944, 948 (1996).  Section 1026(3) states, in
pertinent part: “[a] person who, with intent to cause public inconvenience, or
annoyance or recklessly creating a risk thereof . . . [i]n
a public place uses abusive . . . language . . . shall be
imprisoned for not more than 60 days or fined not more than $500.00 or
both.”  We reconciled the statute with free speech guarantees by holding
that the provision “is properly construed as proscribing only ‘fighting
words.’  Prosecution under that provision is appropriate only when a
defendant’s spoken words, when directed to another person in a public place,
‘tend to incite an immediate breach of the peace.’ “  Read, 165 Vt.
at 148, 680 A.2d at 948 (quoting Chaplinsky
v. New Hampshire, 315 U.S. 568, 572 (1942)).

¶ 7.            
Our decision in Read provides a framework for analyzing our
disorderly conduct statute in light of defendants’ overbreadth
challenge.  Assuming that we find the statute subject to overbroad
application, we must first seek to construe it in a manner that is
constitutional.  See id. at 146, 680 A.2d at 947 (“[T]his Court is
obligated to narrow and limit the statute in light of the protections
guaranteed by the United States . . . constitution[].”).  We will
rehabilitate statutes where there is a readily apparent construction that
renders the statute constitutional.  Id.

¶ 8.            
We turn first to whether § 1026(4) is overbroad on its face, meaning
that it is drafted in such a manner that it proscribes a substantial amount of
constitutionally protected speech when compared to the law’s legitimate
applications.  See Broadrick v.
Oklahoma, 413 U.S. 601, 615 (1973); State v. Cantrell, 151 Vt. 130,
133-34, 558 A.2d 639, 641-42 (1989).  Section 1026(4) reflects the State’s
legitimate interest in preserving the right of peaceful assembly by imposing
sanctions on those who seek to hinder others’ exercise of this right through
disturbances.  Read literally, however, § 1026(4) purports to prohibit all
disturbances of lawful assemblies or meetings—including those occasioned by
speech—without regard to the severity of the disruption.  The statutory
text treats brief outbursts of speech—the content of which may merely be
objectionable to the sensibilities of some (or all) of those assembled—the same
as prolonged, voluminous speech that, for example, drowns out the primary
speaker, preventing audience members from hearing the speaker.  If we were
to apply this statute according to its terms, it would criminalize “heckling,
interrupting, harsh questioning, . . . booing,” and all manner of speech
that has been tolerated pursuant to the rights accorded to the peoples of free
societies.  In re Kay, 464 P.2d 142, 147 (Cal. 1970) (noting also
that such speech, though perhaps rude, “can nonetheless advance the goals of
the First Amendment”).  Thus, we find that § 1026(4), as worded,
impermissibly sanctions a substantial amount of protected speech even when considered
in relation to its legitimate scope.

¶ 9.            
A narrowing interpretation may, nevertheless, render § 1026(4)
constitutional.  The central constitutional tension presented by § 1026(4)
arises from a clash of two fundamental First Amendment rights—freedom of speech
and freedom of assembly.  In construing the statute, we must ensure that
neither fundamental right is unnecessarily sacrificed for the sake of the
other.  We are not without guidance in our endeavor.  The Supreme Court
of California declared a substantially similar statute susceptible to overbroad
application.  See Kay, 464 P.2d at 146, 149.  The California
statute read as follows: ”[e]very person who, without authority of law,
willfully disturbs . . . any assembly or meeting . . . is guilty of a
misdemeanor.”  Id. at 149 (quotation omitted).  Like §
1026(4), the California statute made no allowance for minor disturbances
occasioned by expressions of free speech; therefore, the California Supreme
Court held that “if the section were literally applied with the breadth of
coverage that its terms could encompass, the statute would be constitutionally
overbroad and could not stand.”  Id.  Instead of invalidating
the statute in its entirety, the California Supreme Court construed it to prohibit
only substantial impairments.  Id. at 150.    

¶ 10.        
  We are persuaded to construe our statute similarly. 
Thus, to show that a defendant violated § 1026(4), the State must prove that a
defendant’s conduct—”and not the content of the activity’s
expression—substantially impair[ed] the effective conduct of a meeting.”  Id. 
Narrowing the reach of § 1026(4) in such a fashion strikes the proper balance
between the two fundamental rights implicated by the statute.  

¶ 11.        
The State argues, however, that a narrowing of the statute to require
substantial impairment gives inadequate consideration to the context of the
event in which the disruption occurs.  Indeed, in interpreting 1906 P.S. §
5871, a precursor to § 1026(4), we have held that factors relevant to a
determination of whether a defendant’s conduct substantially impairs the
effective conduct of a meeting include “the nature and character of each
particular kind of meeting, . . . the purposes for which it
is held, and . . . the usage and practice governing such meetings.”  State
v. Mancini, 91 Vt. 507, 511, 101 A. 581, 583 (1917) (quotation
omitted).  In light of the State’s concerns, and consistent with our
holding in Mancini, we hold that the fact finder, in determining whether
a defendant’s conduct substantially impairs the effective conduct of a meeting,
must assess “the actual impact of that misconduct on the course of the
meeting,” Kay, 464 P.2d at 151 (emphasis added). 
Naturally, what amounts to a substantial disturbance in one setting may not in
another, and the fact finder must take this into account.  See id.
at 150.  In doing so, however, the fact finder may not base its decision
on mere assertions of those present that they were “disturbed.”  Id.
at 151.  The standard is an objective one: the fact finder may not
consider the subjective effect of the content of a defendant’s expressive
conduct on those assembled, but must instead evaluate it in terms of “timing,
duration or intensity.”  State v. Linares, 655 A.2d 737, 744 (Conn.
1995); accord Kay, 464 P.2d at 149 (“The right to free expression
articulated through ‘disturbances’ that are no more than announced differences
in ideology or beliefs lies at the heart of the First Amendment; governmental
prohibition of such activity, under any statutory scheme, could not
constitutionally be countenanced.”).  

¶ 12.        
Accordingly, substantial impairment of the effective conduct of a
meeting includes conduct that causes a lawful meeting to terminate
prematurely.  Cf. State v. Schwing, 328
N.E.2d 379, 386 (Ohio 1975) (holding that willful interferences or disturbances
which have the effect of “caus[ing]
a lawful assemblage to terminate in an untimely manner” are not
constitutionally protected).  We also agree with the proposition set forth
by other courts that a defendant’s conduct amounts to a substantial impairment
of a meeting where the defendant makes numerous and sustained efforts to
disrupt a meeting after being asked to desist.  Compare State v. Hardin,
498 N.W.2d 677, 678, 681 (Iowa 1993) (concluding that there was substantial
impairment where defendants and others interrupted private fundraising rally
with “three to five minutes” of loud chanting that “effectively stopped the meeting”
and ignored repeated requests of event organizers to desist), with Dempsey
v. People, 117 P.3d 800, 809-10 (Colo. 2005) (en banc) (concluding that
there was no significant disruption of campaign rally where, among other
things, there was no evidence that the rally stopped or was interrupted by the
defendant speaking into a bullhorn and where the defendant ceased using
bullhorn after being so ordered by the police).

¶ 13.        
Applying these standards to the case at bar, we hold that, as a matter of
law, defendants’ actions did not substantially impair the effective conduct of
the St. Johnsbury Academy’s commencement ceremony.  Indeed, the State
conceded as much by charging this as an “attempt” crime.  As part of the
approximately three-hour-long graduation ceremony, Negroponte delivered a
speech, which lasted for over eight minutes and was delivered in its entirety.
 This speech was interrupted for less than thirty seconds by defendants’
remarks.   Moreover, the record indicates that defendant Wardinski urged the audience to join him in walking out of
the ceremony in protest of Negroponte’s presence and was in the process of
leaving the ceremony voluntarily when he was apprehended.[6]  Both defendants left the site of
the graduation ceremony upon being asked and without further incident,
whereupon they were arrested.  Such de minimis
disturbances, even if rude and out of place in the context of a commencement
ceremony, cannot serve as the basis for criminal liability without running
afoul of the First Amendment.  Cf.  Terminiello
v. City of Chicago, 337 U.S. 1, 4 (1949) (“[F]reedom
of speech, though not absolute, is nevertheless protected against . . .
punishment, unless shown likely to produce a clear and present danger of a
serious substantive evil that rises far above public inconvenience, annoyance,
or unrest.” (citation omitted)).

¶ 14.        
We note that the State contends that the substantial-impairment prong of
Kay is satisfied by virtue of the fact that defendants are charged with
attempted disorderly conduct—a contention we find unavailing.  The
State merely speculates that defendants would have continued, or escalated,
their protest to such an extent as to create a substantial impairment of the
commencement ceremony.  To satisfy constitutional concerns, we have held
here that a fact finder, in assessing whether a defendant’s conduct
substantially impaired the effective conduct of a meeting, must consider the actual
impact of the conduct on the meeting—conjecture will not suffice. 
There was no substantial impairment based on the agreed upon facts.  The
State cannot even charge that there was a disturbance.  The interruption
was minor.  Negroponte’s speech was hardly stopped, and the speakers were
quickly, and without resistance, removed from the location.  If we use the
disorderly conduct statute to punish defendants by not requiring that the
disturbance be substantial, we would be punishing them for speech in
violation of the First Amendment.  

¶ 15.        
Finally, and contrary to the State’s assertions, our holding does not
“imperil other citizens’ rights of free association and discussion.”  The
Academy acted within its rights when it ejected defendants from the graduation
ceremony once they began heckling Negroponte.  Cf. Adderley
v. Florida, 385 U.S. 39, 48 (1966) (noting that “people who want to
propagandize protests or views” do not have “a constitutional right to do so
whenever and however and wherever they please”).  In the context of such a
private graduation ceremony, the Academy need not have allowed defendants to
“unilaterally alter[] the . . . program and place[] [themselves] and [their]
message on the agenda . . . under the guise of exercising general rights of
free speech.”  McIntosh v. Ark. Republican Party-Frank White Election
Comm., 766 F.2d 337, 341 (8th Cir. 1985).  Though we are mindful that
defendants’ remarks likely offended some of the attendees of the graduation,
and even caused a brief interruption of the ceremony, without more, the power
of the State may not be brought to bear against defendants.

The charges are dismissed.

 

 

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  











[1] Negroponte’s
son was a member of the graduating class of 2006 at St. Johnsbury Academy.

 





[2] 
The parties have stipulated that Negroponte’s speech “was standard
inspirational fare and not overtly political.”

 





[3] 
Section 1026(4) provides, in pertinent part: “[a] person who, with intent to
cause public inconvenience, or annoyance or recklessly creating a risk thereof
. . . [w]ithout lawful authority, disturbs any lawful
assembly or meeting of persons . . . shall be imprisoned for not more than 60
days or fined not more than $500.00 or both .”
       

 





[4] 
The First Amendment provides: “Congress shall make no law . . . abridging the
freedom of speech . . . .”  U.S. Const. amend. I.  The First
Amendment limits not only the law-making authority of the federal government
but also, pursuant to the Fourteenth Amenmdent, that
of the states.  See, e.g, Thornhill
v. State of Alabama, 310 U.S. 88, 95 (1940) (“The freedom of speech . . .
which [is] secured by the First Amendment against abridgment by the United
States, [is] among the fundamental personal rights and liberties which are
secured to all persons by the Fourteenth Amendment against abridgment by a
state.”).





[5] 
We note that “[t]he right of peaceable assembly is a right cognate to . . .
free speech . . . and is equally fundamental.”  De Jonge
v. Oregon, 299 U.S. 353, 364 (1937).





[6] 
It is questionable whether the statute, literally applied, even reaches
defendant Wardinski’s conduct.