IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-060

Filing Date: August 24, 2021

No. A-1-CA-39165

STATE OF NEW MEXICO,

      Plaintiff-Appellant,

v.

DENSON BECENTI,

      Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY
Louis E. DePauli, Jr., District Judge

Released for Publication November 9, 2021.

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellee

OPINION

HANISEE, Chief Judge.

{1}    The State appeals from the district court's order reducing Denson Becenti's (Defendant) criminal charge from felony battery upon a peace officer, contrary to NMSA 1978, Section 30-22-24 (1971), to petty misdemeanor battery, contrary to NMSA 1978, Section 30-3-4 (1963). We are asked to determine whether a public service officer (PSO) performing duties under the Detoxification Reform Act (DRA), NMSA 1978, §§ 43-2-1.1 to -2-23 (1977, as amended through 2019), is a peace officer upon whom battery is prohibited under Section 30-22-24. We agree with the district court that a PSO

whose duties are limited to those under the DRA, and is therefore not vested with a duty to make arrests or maintain public order, is not a peace officer for purposes of Section 30-22-24. Thus, we affirm.

**BACKGROUND**

**{2}** On July 27, 2019, Officer Wilma Seciwa, a PSO employed by the Gallup Police Department, approached Defendant who was asleep in his vehicle near an interstate exit. Officer Seciwa awoke Defendant and escorted him to her vehicle to place him into protective custody. While Officer Seciwa was holding him upright to prevent him from falling, Defendant hit her forearm. Officer Seciwa then called the police department, who dispatched Officer Adrian Quetawki, a police officer with the Gallup Police Department, to investigate Officer Seciwa's allegation of battery against Defendant.

**{3}** The State ultimately charged Defendant with felony battery upon a peace officer under Section 30-22-24. Defendant filed a motion to dismiss pursuant to *State v. Foulenfont*, 1995-NMCA-028, 119 N.M. 788, 895 P.2d 1329, asserting that the evidence presented was insufficient to support Defendant's charge of felony battery upon a peace officer because Officer Seciwa is not a "peace officer" as a matter of law. The State responded that because Officer Seciwa is "vested by law with a duty to maintain public order or to make arrests for crime, whether that duty extends to all crimes or is limited to specific crimes," under NMSA 1978, Section 30-1-12(C) (1963), she qualifies for the heightened protection from battery afforded to peace officers. At a hearing on Defendant's motion, the State stipulated that Officer Seciwa is "a full-time employee of the City of Gallup—charged with enforcing the [DRA] . . . , is a uniformed officer with a badge, . . . [and] . . . is not a certified police officer." In a written order, the district court reduced the charge against Defendant to petty misdemeanor battery, reasoning that "[b]ecause public service officers are not vested with the duty to maintain public order . . . the [L]egislature did not intend public service officers to be peace officers[.]" The State appeals.

**DISCUSSION**

**{4}** On appeal the State argues that the district court erred in concluding that Officer Seciwa is not a "peace officer" under Section 30-22-24 because (1) the plain language of the relevant statutes, as well as precedent interpreting them, demonstrates that "the Legislature did not intend to exclude PSO[]s" from the definition of peace officer; and (2) Officer Seciwa is "a public official or public officer vested by law under the [DRA] with core duties that serve a central purpose of maintaining public order."

**Standard of Review**

**{5}** We must resolve whether the term "peace officer" as applied in Section 30-22-24 includes PSOs operating under the DRA. "Statutory interpretation is a matter of law and is reviewed de novo." *State v. Chakerian*, 2018-NMSC-019, ¶ 10, 458 P.3d 372. When interpreting statutory language, "our main goal is to give effect to the Legislature's

intent." *State v. Almanzar*, 2014-NMSC-001, ¶ 14, 316 P.3d 183 (alteration, omission, internal quotation marks, and citation omitted). To discern that, we first consider "the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* (internal quotation marks and citation omitted). In applying the plain meaning rule, we additionally consider the "context surrounding a particular statute, such as its history, its apparent object, and other [related] statutes[.]" *State v. Cleve*, 1999-NMSC-017, ¶ 8, 127 N.M. 240, 980 P.2d 23. "[W]hen construing an undefined term in a criminal statute, the court should embrace the common sense meaning of the statutory language in light of the rule that criminal statutes should be construed to further their purpose." *State v. Johnson*, 2009-NMSC-049, ¶ 13, 147 N.M. 177, 218 P.3d 863 (internal quotation marks and citation omitted).

### PSOs Are Not Vested With a Duty to Maintain Public Order or to Make Arrests and Therefore Are Not Peace Officers

**{6}** To determine whether the Legislature intended to include PSOs in the definition of "peace officer" applicable to Section 30-22-24, we must examine the meaning of several statutory provisions. The DRA itself defines a PSO to be "a civilian employee within a police department who is authorized by the police department to transport intoxicated or incapacitated persons to a treatment facility or detention center[.]" Section 43-2-2(L). In analyzing whether a PSO is a peace officer, we turn to the Criminal Code, which provides a list of general definitions applicable to all crimes included within it, including battery upon a peace officer. *See, e.g.*, *State v. Ogden*, 1994-NMSC-029, ¶ 31, 118 N.M. 234, 880 P.2d 845 (explaining that because the crime of battery upon a peace officer is part of the Criminal Code, the Criminal Code's definition of "peace officer" may be applied).

**{7}** To this end, Section 30-1-12(C) defines "peace officer" as "any public official or public officer vested by law with a duty to maintain public order or to make arrests for crime, whether that duty extends to all crimes or is limited to specific crimes[.]"[1] The Criminal Code further defines "public officer" as "any elected or appointed officer of the state or any of its political subdivisions, . . . whether or not he receives remuneration for his services[.]" Section 30-1-12(I). The State argues that PSOs should not be excluded from the definition of "public officer," pointing to precedent that instructs that status as a "public officer" under the definition of "peace officer" turns on whether such individual's duties "involve[] maintaining public order." The Criminal Procedure Act, NMSA 1978, §§ 31-1-1 to -3-9 (1972, as amended through 2016), similarly defines police officer, law enforcement officer, peace officer, or officer as "any full-time salaried or certified part-time salaried officer who by virtue of office or public employment is vested by law with the duty to maintain the public peace[.]" Section 31-1-2(F); *see Baptiste v. City of Las*

---

1The Criminal Code does not define "public official," an omission that the State contends "undermines any contention that the term 'public official' . . . necessarily excludes a PSO." The State however makes or develops no argument that a PSO is a public official, therefore we decline to address that possibility. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").

*Cruces*, 1993-NMCA-017, ¶ 7, 115 N.M. 178, 848 P.2d 1105 (explaining that "public order and public peace capture the same concept and a violation of either is a breach of the peace" (internal quotation marks omitted)); *see also State v. Correa*, 2009-NMSC-051, ¶ 22, 147 N.M. 291, 222 P.3d 1 (defining "disturbing the peace" as "a disturbance of public order by an act of violence . . . or which, by causing consternation and alarm, disturbs the peace and quiet of the community" (internal quotation marks and citation omitted)).

{8}     The State contends that Section 30-1-12(C), providing the definition of "peace officer" applicable to battery upon a peace officer, "does not exclude PSO[]s like [Officer] Seciwa who are performing duties under the DRA" because PSOs are "vested by law . . . with core duties that serve a central purpose of maintaining public order." More specifically, the State argues that, when such an employee's "function in the public domain," "involves maintaining public order[,]" the duty to maintain public order is sufficient to make the employee a peace officer, pursuant to Section 30-1-12(C). Defendant answers that "the plain language of the DRA evinces a clear legislative intent to distinguish between peace officers and public service officers."

{9}     Regarding the important purpose of maintaining public order, we first examine case law interpreting this duty. Particularly instructive is *Vigil v. Martinez*, 1992-NMCA-033, ¶ 18, 113 N.M. 714, 832 P.2d 405, in which we declined to conclude that probation officers are vested with a duty to maintain public order, explaining that "[a]lthough one would hope that the efforts of probation and parole officers would improve public order by helping probationers and parolees to become good citizens, the same could be said of the efforts of those employed in education and social services." *Id.*

{10}    By way of contrast, in cases in which we have concluded public officers or officials to be peace officers, the maintenance of public order was essential in their duties. For instance, in *State v. Rhea*, 1980-NMSC-033, ¶ 5, 94 N.M. 168, 608 P.2d 144, we held that the Legislature intended to include jailers within the definition of "peace officer" because "[a] jailer is an officer in the public domain, charged with the duty to maintain public order." Similarly in *State v. Salas*, 2017-NMCA-057, ¶¶ 39-41, 400 P.3d 251, we determined that testimony from the victim that he was a corrections officer employed by the Bernalillo County Metropolitan Detention Center was "substantial evidence that he [was] a peace officer."

{11}    Because we are asked to construe the meaning of "maintaining public order" as it has been interpreted in the law enforcement context, case law examining traditional duties of law enforcement also guides our analysis. *See Ogden*, 1994-NMSC-029, ¶ 39 ("To determine whether positions are of a law enforcement nature, [appellate courts] will look at the character of the principal duties involved"); *see also Anchondo v. Corr. Dep't*, 1983-NMSC-051, ¶¶ 8, 10, 100 N.M. 108, 666 P.2d 1255 (explaining that "[i]n determining whether a person is involved in law enforcement work, [appellate courts have] adhered to the concept of traditional law enforcement activities"). Activities traditionally associated with law enforcement include, "preserving the public peace, preventing and quelling public disturbances, and enforcing state laws, including but not

limited to the power to make arrests for violation of state laws." *Limacher v. Spivey*, 2008-NMCA-163, ¶ 14, 145 N.M. 344, 198 P.3d 370 (alteration, internal quotation marks, and citation omitted). However, because there is no exhaustive list as to what constitutes law enforcement activities, "[d]etermination in each case is fact specific[.]" *Id.* (internal quotation marks and citation omitted).

**{12}** Considered alongside the stated purpose of the DRA, providing that "[i]t is the policy of this state that intoxicated and incapacitated persons may not be subjected to criminal prosecution, but rather should be afforded protection[,]" § 43-2-3, we determine that similar to probation officers, maintaining public order is not the principal duty vested to PSOs. *Vigil*, 1992-NMCA-033, ¶¶ 17-18. Unlike jailers whose "principal duty" is "to hold in custody any person accused or convicted of a criminal offense[,]" NMSA 1978, § 33-3-28(A) (1985), the principal duty of PSOs as explained by their defining statute is to protect intoxicated persons by "transport[ing] intoxicated or incapacitated persons to a treatment facility or detention center." Section 43-2-2(L). Furthermore, the duties of PSOs do not encompass activities traditionally associated with law enforcement. PSOs do not have a duty to preserve the public peace, prevent disturbances, or as explained below, make arrests. *Limacher*, 2008-NMCA-163, ¶ 14.

**{13}** As further support that "maintaining public order is a central element of the duties" vested to PSOs, the State points to PSOs' authority to request that an intoxicated or incapacitated person be admitted into protective custody. While the State does not directly contend that PSOs possess authority to make arrests, it argues that the circumstances under which PSOs are authorized to request commitment of an intoxicated or incapacitated person to protective custody in a treatment or detention facility demonstrates that a PSO's central responsibility is maintaining public order. The DRA provides seven circumstances under which PSOs are authorized[2] to request that a treatment facility commit an intoxicated or incapacitated person into protective custody:

  (1)    is disorderly in a public place;

  (2)    is unable to care for the person's own safety;

  (3)    has threatened, attempted or inflicted physical harm on himself or another;

  (4)    has threatened attempted or inflicted damage to the property of another;

  (5)    is likely to inflict serious physical harm on himself;

  (6)    is likely to inflict serious physical harm on another; or

---

[2]The DRA states that an authorized person means a "physician, [PSO] or police officer." Section 43-2-2(B).

(7)     is incapacitated by alcohol or drugs.

Section 43-2-8(A).

**{14}** Although Section 43-2-8 provides PSOs authority to request that an intoxicated or incapacitated person be committed to a treatment facility, we are not persuaded that such authority is sufficiently analogous to the authority to make arrests or, as the State contends, that this authority converts the purpose of the job from protecting intoxicated or incapacitated individuals to maintaining public order. Moreover, as noted above, the DRA expressly provides that "[a]n intoxicated person held in protective custody pursuant to the [DRA] shall not be considered to have been arrested or charged with any crime." Section 43-2-8(F). Indeed, Officer Seciwa's own actions demonstrate the limited authority granted to PSOs. After Defendant hit Officer Seciwa's arm, she did not arrest him herself. Rather, Officer Seciwa called the Gallup Police Department who dispatched Officer Quetawki to arrest Defendant.

**{15}** The State additionally points to the DRA itself which provides, "[a] peace officer or public service officer may . . . make a protective search of an intoxicated person before transporting the person to a residence, treatment facility or detention center[,]" § 43-2-19(A), as further evidence that PSOs are vested with a duty to maintain public order. While we deem it significant that the DRA refers to peace officers and public service officers separately, § 43-2-19; *see Hale v. Basin Motor Co.*, 1990-NMSC-068, ¶ 9, 110 N.M. 314, 795 P.2d 1006 ("[T]he word 'or' should be given its normal disjunctive meaning unless the context of a statute demands otherwise."), we are unpersuaded that the authority to make a protective search of a person entering into protective custody is sufficient to classify PSOs as peace officers.

**{16}** Thus, in construing the DRA to further its purpose and viewing the duties of PSOs in a light that affords intoxicated and incapacitated persons protection, *see Johnson*, 2009-NMSC-049, ¶ 13, we are unpersuaded that the duties of PSOs serve a central purpose of maintaining public order as argued by the State. We hold that PSOs, such as Officer Seciwa, are not vested with a duty to maintain public order.

## CONCLUSION

**{17}** Because we hold PSOs are not vested with the duty to maintain public order or make arrests for crime and are therefore not peace officers, we affirm the district court's order reducing Defendant's criminal charge from battery upon a peace officer to petty misdemeanor battery, and remand for further proceedings consistent with this opinion.

**{18}   IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**JANE B. YOHALEM, Judge**